O’NIELL, O. J.
 

 Under authority of Act 292 of 1926, the Louisiana Public Service Commission granted a
 
 certificate of public convenience and necessity
 
 to the Motor Freight Lines, Inc., authorizing the corporation to operate a motor freight line over the state highway between New Orleans and Baton Rouge, via Oak Grove, Gonzales, and Burnside. Notice of the application for the certificate had been given to the three competing common carriers between New Orleans and Baton Rouge, namely, Yazoo
 
 &
 
 Mississippi Valley Railroad Company, Louisiana Railway & Navigation Company (now Louisiana & Arkansas Railway Company), and Baton Rouge New Orleans Packet Company. The three competing carriers filed protests against the granting of the certificate of convenience and necessity; and the evidence was heard after due notice to all of them. The Yazoo & Mississippi Valley Railroad Company and Baton Rouge New Orleans Packet Company appeared and introduced evidence in opposition to the granting of the certificate. The Louisiana Railway
 
 &
 
 Navigation Company (now Louisiana
 
 &
 
 Arkansas Railway Company) did not take part in the proceedings before the commission. The Yazoo
 
 &
 
 Mississippi Valley Railroad Company brought this suit in the district court to have the certificate annulled and canceled. ¡The district court, after considering the evidence which had been introduced at the hearing before the Public Service Commission, and additional evidence introduced by the plaintiff in • the trial in the court, rejected the plaintiff’s demand. The plaintiff has appealed from the decision. The Louisiana & Arkansas Railway Company and the Baton Rouge New Orleans Packet Company are not parties to the suit.
 

 The question presented is whether the Public Service Commission abused its authority in its ruling that the service rendered by the Motor Freight Lines, Inc., was a matter of “public convenience and necessity.” The Motor Freight Lines, Inc., renders a public service which the railroad company does not render or propose to render; that is what is called a
 
 store-door pickup and delivery
 
 of freight. The freight lines sends its own vehicles to the places of business of the shippers, and, at its own expense, picks up and receipts for all shipments tendered for transportation to points between New Orleans and Baton Rouge, and brings the parcels to a central warehouse or depot, where they are classified, billed, and shipped in motor vehicles to their destination and delivered into the hands of the consignee. All so-called L. C. L. (less than carload) shipments by railroad must be delivered at the depot of the railroad company, by the shipper, at his own expense, and within hours specified by the railroad company, and, at the point of destination, the freight is delivered into the railroad company’s depot, whence it must be drayed to the place of business of the consignee at his expense.
 

 It is admitted by counsel for the railroad company that this so-called “store-door pickup and delivery” service, rendered by the Motor Freight Lines, Inc., is a matter of public convenience, but it is denied that it is a matter of necessity. It is well settled, in all jurisdictions where such a statute as the Act
 
 *446
 
 No. 292 of 1926 has been enacted, that the word “necessity,” in the phrase “public convenience and necessity,” does not mean something indispensable. It is the meaning of the whole phrase “public convenience and necessity” which the Public Service Commission and the courts are concerned with, and which can be determined only according to the context, and not by dissecting the phrase and giving to each word, separately, the lexicographer’s definition of it. If the Legislature had intended that the word “necessity,” as used in this statute, should mean something indispensable, the using of the word “convenience,” or of the phrase “convenience and necessity,” would have been inexcusable tautology, because the word “necessity,” as used in the statute, includes and means something more than a mere “convenience.” Chief Justice Marshall expressed the idea which we are endeavoring to express when, in McCulloch v. Maryland, 4 Wheat. 316, 414, 4 L. Ed. 579, he defined the phrase “necessary and proper” in the provision in the Constitution giving to Congress the poWer “to make all laws which shall be necessary and proper for carrying into execution,” etc. The Chief Justice said:
 

 “But the argument on which most reliance is placed, is drawn from the peculiar language of this clause. Congress is not empowered by it to make all laws, which may have relation to the powers conferred on the government, but such only as may be ‘neces-,’ sary and proper’ for carrying them into execu-| tion. The word ‘necessary,’ is considered as controlling the whole sentence, and as limiting the right to pass laws for the execution of. the granted powers, to such as are indispensable, and without which the power would bel nugatory. *
 
 v *
 
 Is it true, that this isi the sense in which the word ‘necessary’ is1 always used? Does it always import an absolute physical necessity, so strong, that one thing, to which another may be termed necessary, cannot exist without that other? We think it does not. * * * It is essential to just construction, that many words which import something excessive, should be understood in a more mitigated sense — in that sense which common usage justifies. The word ‘necessary’ is of this description. It has not a fixed character peculiar to itself. It admits of all degrees of comparison; and is often connected with other words, which increase or diminish the impression the mind receives of the urgency it imports. * * * In ascertaining the sense in which the word ‘necessary’ is used in this clause of the constitution, we may derive some aid from that with which it is associated. Congress shall have power ‘to make all laws which shall be necessary and proper to carry into execution’ the powers of the government. If the word ‘necessary’ was used in that strict and rigorous sense for which the counsel for the State of Maryland contend, it would be an extraordinary, departure from the usual course of the human mind, as exhibited in composition, to add a word, the only possible effect of which is to qualify that strict and rigorous meaning,” etc.
 

 13] There is, therefore, no abuse of authority on the part of the Public Service Commission in its finding that the so-called store-door pickup and delivery service furnished by the Motor Freight Lines, Inc., which is something of an innovation in the method of ,handling local freight by public carriers, is a ¡matter of “public convenience and necessity,” ¡within the meaning of the statute. Whenever the Public Service Commission, in the issu'ing of an order, has acted within its power, and not arbitrarily or grossly contrary to the .evidence, and when no error of law has been committed, the court must not substitute its
 
 *448
 
 judgment for that of the commission, or consider the expediency or wisdom of the order, or say whether on like evidence the court would have made a similar ruling. Standard Oil Co. v. Louisiana Public Service Commission, 154 La. 557, 97 So. 859 ; Interstate Commerce Commission v. Union Pacific Railroad Co., 222 U. S. 541, 32 S. Ct. 108, 56 L. Ed. 308.
 

 It is contended by counsel for appellant that the competition which has been created by the order complained of will be disastrous to the railroad company in depriving the company of the major part of its business in L. C. L. shipments of freight; but the testimony does not convince us of that. The only comparative figures furnished are that, during the two months preceding the granting of the order, the plaintiff, railroad company, handled 2,620,483 pounds of L. C. L. freight between New Orleans and Baton Rouge, and the Motor Freight Lines, Inc!, handled, during the same two months, 4,901,788 pounds of freight, or nearly twice the tonnage handled by the railroad company — all of which serves to show the “convenience and necessity” of this innovation in the shipments of freight between the two cities. The railroad company, of course, does not depend entirely upon the business done in L. C. L. shipments; and the record does not show what proportion of the company’s business consists of L. O. L. shipments.
 

 Counsel for the railroad company, in their brief, question the “financial ability” of the Motor Freight Lines, Inc. The second paragraph of the third section of Act No. 292 of 1926 provides that the Public Service Commission shall, before granting a certificate of convenience and necessity, have a “hearing and investigation as to the financial ability and good faith of the applicant and the necessity for such service.” The commission made the investigation, and was satisfied with the showing of financial ability of the applicant; and there is nothing unreasonable in the commission’s finding in that respect. The Motor Freight Lines, Inc., owns all of the equipment necessary for carrying on its business, and meets its obligations promptly. According to the sixth section of the statute, the company is required to furnish an indemnity bond of $10,000 for each and every vehicle used for carrying freight, with the suretyship of a surety company authorized to do business in the state, to secure the payment of any damages done to any person or property by the operation of the vehicles. There is, therefore, no reason why a motor carrier of freight should be required by the Public Service Commission to have any greater amount of capital than the amount invested in its equipment and necessary to carry on the business properly. The public is protected in that respect by the provision in the fourth section of the statute that the commission may, at any time, after giving due notice to the grantee of a certificate and to the competing carriers, and an opportunity to be heard, suspend, revoke, alter, or amend any such certificate, for good cause; and the grantees of such certificates are protected by the proviso that, on a finding by the commission that any motor carrier does not furnish convenient and necessary service in accordance with the rules and regulations and orders of the commission, the motor carrier shall be given á reasonable time to provide such service before any existing certificate is canceled or a new one granted over the route mentioned in the commission’s finding.
 

 The judgment is affirmed.