176 So.2d 408

**SAIA MOTOR FREIGHT LINE, INC.**

**v.**

**LOUISIANA PUBLIC SERVICE
COMMISSION et al.**

No. 47630.

June 7, 1965.

Rehearing Denied July 2, 1965.

Theo F. Cangelosi, John Schwab, Robert L. Cangelosi, O. Romaine Russell, Baton Rouge, Jerry W. Millican, New Orleans, Douglas A. Allen, Metairie, Joseph H. Kavanaugh, Baton Rouge, for defendant-appellant and intervenor-appellant.

Joseph L. Waitz, O'Neal & Waitz, Houma, for plaintiff-appellee.

McCALEB, Justice.

Plaintiff, Saia Motor Freight Line, Inc., a Louisiana corporation holding a certificate of public convenience and necessity as a common carrier of general commodities within the southeastern section of Louisiana, instituted this suit against the Louisiana Public Service Commission seeking annulment of the Commission's Order No. 8903. This order granted to Earl Guillory, doing business as Ozone Motor Line and operating as a common carrier of general commodities by motor, an amendment to his certificate No. 275-F which' authorized Ozone Motor Line open-

door transportation between Baton Rouge and the Louisiana Florida Parishes with the proviso that no local traffic is to be handled between Baton Rouge proper and points located on U. S. Highway No. 61 and Louisiana Highways Nos. 19 and 67 and no shipments are to be transported between Baton Rouge and New Orleans.

From a judgment of the district court decreeing the assailed order void, the Louisiana Public Service Commission and Guillory, who intervened below in defense of the Commission's order, have appealed. The record reveals the following facts:

Earl Guillory, doing business as Ozone Motor Line, applied to Louisiana Public Service Commission seeking an amendment to Certificate No. 275–F to authorize intermediate service from and to Baton Rouge connecting with and in addition to routes otherwise certified to him. Specifically, he sought removal of closed-door service between Hammond, Louisiana and the intersection of U. S. Highway No. 61 with La. Highway No. 964 near Zee, Louisiana, with service to and from intermediate points prohibited. The authority requested would have permitted Ozone to operate between Baton Rouge and points otherwise certified to it, except that no service would be performed between Baton Rouge and points located on U. S. Highway No. 61 and La. Highways Nos. 19 and 67. The request would have also included open-

door service between New Orleans and Baton Rouge.

Considerable opposition was offered to the granting of this application, especially from those carriers holding certificates for open-door service between Baton Rouge and New Orleans. Among the protestants was plaintiff herein.

Following a hearing, the application was denied by a two-to-one vote of the Commission. Guillory then filed a petition for rehearing or reconsideration of his application, pointing out therein that public convenience and necessity was shown at the original hearing for open-door service between Baton Rouge and points in the Florida Parishes already under certificate to him and that the main opposition was not directed to this part of the application but was aimed at preventing the granting of an extension of the certificate to include operations between Baton Rouge and New Orleans.

Saia objected to the application for reconsideration, which was subsequently granted. Before the matter was heard on rehearing, Guillory sought and was granted, over the objections of Saia, an amendment to his petition deleting from his original application the request for authority to furnish service between Baton Rouge and New Orleans and limiting consideration to his request for authority to serve points in the Florida Parishes (Slidell, Bogalusa, Kentwood, etc.) with open-door transporta-

tion to and from Baton Rouge. When this amendment was permitted, all opponents other than Saia and B & R Truck Line (which had an application pending for the same route) withdrew their protests.

At the trial on rehearing, several witnesses were called and permitted to testify, over the objection of Saia that their evidence was cumulative. After considering the additional evidence the Commission, by a two-to-one vote, issued its Order No. 8903, now under attack, which authorizes Guillory to give open-door service between Baton Rouge and points in the Florida Parishes already certificated to him.

At the first hearing before the Commission nine witnesses testified for Guillory and the opponents produced five. The testimony of Guillory's witnesses was to the effect that there was a need for direct service, while the opponents testified that Saia is already furnishing this service. Upon interrogation, many of Guillory's witnesses stated that they were not apprised that Saia was offering direct service.

On rehearing, after amendment of the application to limit the request to the furnishing of open-door service between Baton Rouge and points in the Florida Parishes, Guillory produced witnesses who stated that there was a definite need for this additional service.

Mr. Tom Savage, Sales Manager for Fraenkel Wholesale Furniture Co. in Baton Rouge, testified that 70% of his business is done out of town and some in the Florida Parishes. He stated that he had shipped by Saia in the past two weeks and requested direct service but that Saia went through New Orleans, where the goods were interchanged, that is, unloaded from one carrier to another. In addition, he stated that goods sent by his company to Franklinton were shipped by Saia out of Baton Rouge with a connecting carrier. He testified that there is a need for direct service to Slidell and Franklinton and that he has lost business in Franklinton because he is not able to obtain direct delivery. This witness explained that interchange in the shipment of furniture is not desirable since there is more risk of damage than if the shipment is direct without the use of a connecting carrier.

Mr. Joe McGowan, Area Manager of Gulf Supply Co. in Baton Rouge, engaged in the business of handling pipe valves, fittings, etc. for the chemical, oil and paper allied industries, testified that freight is transported to Bogalusa via New Orleans and there is no direct service to Slidell by Saia. The bulk of McGowan's business is freight to Bogalusa with 20 to 25% going to Slidell, Hammond and Franklinton. His company services Crown Zellerbach in Bogalusa and he has been unable

to secure business at the NASA complex at Slidell because he is at a competitive disadvantage by not being able to ship directly to Slidell from Baton Rouge. Since there is no direct service, his company carries shipments in its own trucks during emergencies.

Mr. L. E. Watson, District Traffic Manager of Crown Zellerbach Corporation, Bogalusa, testified that, at present, shipments are routed over Ozone (Guillory) to New Orleans and by Ryder Truck Line to Baton Rouge. His competitors enjoy direct service to Baton Rouge and it would be beneficial to his company to have the same direct service from its plant. Goods purchased in Baton Rouge by his plant now come through New Orleans by common carrier truck line by means of interchange. During the period from January 2, 1963 to March 15, 1963, his company had 35 shipments from Bogalusa to Baton Rouge and these shipments were sent by common carriers to New Orleans and then to Baton Rouge.

Roy Yarborough, Hammond, the Traffic Sales Manager for Ozone, corroborated the foregoing evidence as to the necessity for the issuance of the amendment to the certificate of Guillory.

On the other hand, John L. Saia, of plaintiff motor freight line, testified that his company gives overnight service to Hammond, Slidell and Covington from Baton Rouge, but admitted that he does not give direct service from Baton Rouge to Franklinton and Bogalusa. This can be accomplished only by interchange at New Orleans or Hammond with Southeastern Motor Lines, Ozone or B. & R. When asked to explain certain freight bills introduced in evidence, showing freight loaded in Baton Rouge and carried to New Orleans before being shipped to points that his company is certificated to give direct service, Mr. Saia sought to place blame on the shipper for the routing. In essence, he conceded that his service is not "direct service" as this term is used, but "direct" by means of interchange.

Freight bills were introduced by Saia to support his testimony that he furnishes overnight service between points in the Florida Parishes and Baton Rouge. While a majority of these bills show one-day service, many of them reveal that there has been three days or more delay between shipment and delivery. Explanation of this was attempted by Saia, who directed attention to the notation on some of the bills "SR" (Shippers request or Shippers routing) which means the shipment was routed by the shipper in certain instances.

Pitre, of Southeastern Freight Line, and Green, Saia's General Manager in the Baton Rouge area, corroborate the testimony of John Saia but no public witnesses were offered to support his testimony that direct service—i. e., without connecting carrier—was, in fact, furnished.

After reviewing the testimony taken before the Commission, the trial judge sustained plaintiff's procedural objections to the Commission's consideration of the rehearing, declaring that it actually afforded Guillory an opportunity to use additional witnesses "all of whom should have been brought in on the first hearing." Passing on to the merits, the judge opined that Guillory had failed on first hearing to clearly show that the public convenience and necessity would be materially promoted by granting his request and that he failed to see that the additional testimony elicited on rehearing " * * * has improved in any way the applicant's position. The most the Court can say for the bulk of testimony is that apparently many of these customers apparently were not aware that Saia Motor Freight Lines, Inc. gave daily service in the area in which they operated their business."

■ We think the judge erred in both deductions. Initially, we find no merit in plaintiff's contention that Guillory's application for a rehearing was violative of subsection L, paragraph (3) of the Commission's rules, which requires that the application for rehearing specify the matters claimed to have been erroneously decided and briefly state the alleged errors. The substance of the application for rehearing is that the Commission failed to take note of the fact "that public convenience and necessity was shown for service between Baton Rouge and points in the Florida Parishes already under certificate to your applicant" and that the opposition carriers' main objection was not to this part of the application but was aimed at preventing applicant from being granted a certificate to operate between Baton Rouge and New Orleans.

■■ Counsel for plaintiff also misconceive the essence of Guillory's application when they contend that the rehearing was being sought for the purpose of introducing evidence merely of a cumulative nature. Guillory asserted that the Commission erred inasmuch as the evidence already in the record demonstrated that public convenience and necessity required that he be given an amended certificate for open-door transportation between Baton Rouge and the Florida Parishes. And he merely added that, if the Commission so desired, he would furnish additional witnesses to substantiate the allegedly proven fact of public convenience and necessity. Hence, since Guillory was not seeking a further hearing on the basis of new evidence, it was not at all essential for him to set forth the nature of that evidence. The offer to supply additional evidence was left to the discretion of the Commission and we have no doubt that it had the power and right, on its own motion or otherwise, to hear any such evidence tendered at the rehearing.

Furthermore, the evidence submitted by Guillory on rehearing cannot be regarded as "cumulative", and thus objectionable under the Commission's rules. Plaintiff's counsel strenuously argue in brief that the nine witnesses produced by Guillory at the first hearing "failed to prove anything". Accordingly, if the evidence on rehearing shows that public convenience is promoted by the issuance of the additional certificate (and we find it does), then such evidence can hardly be regarded as "cumulative" of the evidence which counsel declare "failed to prove anything". Cumulative evidence is that which goes to prove what is already established by other evidence. See Black's Law Dictionary, Fourth Edition, pg. 455.

Nor do we find any substance in counsel's objection that the Commission could not accept the amendment to Guillory's original application, which limited his request to open-door service between Baton Rouge and the Florida Parishes. A party may always seek less in an application for rehearing than that originally requested.

On the merits of the case, we have no hesitancy in ruling that the testimony as a whole reflects the public need for the certificate herein applied for in view of the fact that, without interchange or interlining (as the term is used in the record), there is no "direct" carrier truck line service between Baton Rouge and the industrial communities of Bogalusa and Franklinton and the service to the other communities (Hammond, Slidell, Covington, Kentwood, etc.) in the Florida Parishes has not been overnight in every instance and general as to all shippers. But, were we in doubt that the preponderating evidence did not amply establish the finding of the Commission, this would not have justified the ruling below since there is unquestionably some substantial evidence, to which we have referred above, supporting the Commission's order. It is only in cases where the Commission has acted arbitrarily and without any reasonable grounds that the courts may interfere with its discretionary powers.[1]

In Rubion Transfer & S. Co. v. Louisiana Pub. Serv. Com'n, 240 La. 440, 123 So.2d 880, it was appropriately stated:

"After a review of the record we do not feel there is justification for cancelling the orders of the Louisiana

---

1. Yazoo & M. V. R. Co. v. Louisiana Pub. Serv. Com'n, 170 La. 441, 128 So. 39; Herrin Transfer & Warehouse Co. v. Louisiana Pub. Serv. Com'n, 180 La. 847, 157 So. 785; Burke v. Louisiana Pub. Serv. Com'n, 215 La. 451, 40 So.2d 916; Gulf States Utilities Co. v. Louisiana Pub. Serv. Com'n, 222 La. 132, 62 So.2d 250; Illinois Central R. Co. v. Louisiana Pub. Serv. Com'n, 224 La. 279, 69 So. 2d 43; Texas & New Orleans R. Co. v. Louisiana Pub. Serv. Com'n, 233 La. 787, 98 So.2d 189; Faulk-Collier Bonded Warehouse, Inc. v. Louisiana Pub. Serv. Com'n, 236 La. 357, 107 So.2d 668.

Public Service Commission in the instant case. As was aptly observed by this Court in Yazoo & M.V.R. Co. v. Louisiana Public Service Commission, 170 La. 441, 128 So. 39, '* * * Whenever the Public Service Commission, in the issuing of an order, has acted within its power, and not arbitrarily or grossly contrary to the evidence, and when no error of law has been committed, the court must not substitute its judgment for that of the commission, or consider the expediency or wisdom of the order, or say whether on like evidence the court would have made a similar ruling.' 170 La. at page 446, 128 So. at page 40."

Our recent decision in Hearin Tank Lines, Inc. et al. v. Louisiana Public Service Commission, 247 La. 826, 174 So.2d 644, No. 47,560 of the docket handed down on May 3, 1965, after referring to many apposite authorities and quoting approvingly from the Rubion Transfer case, supra, succinctly states the principle thus:

"In other words, upon judicial review a court will not upset orders such as the one in this case unless after looking at the evidence it concludes that the commission could not have reasonably concluded that there had been a clear showing that the public convenience and necessity would be materially promoted thereby, and that the commis-

sion's action was therefore arbitrary and capricious and a clear abuse of its power."

Far from finding any abuse of power in the instant case, we conclude that the evidence sustains the action of the Commission.

For the reasons assigned, the judgment appealed from is reversed and the suit is dismissed at plaintiff's cost.