443 So.2d 1127 (1983)
Rhonda BROOME
v.
Wendell H. GAUTHIER and State Farm Fire & Casualty Company.
Margaret BARBER, Richard T. McGawley, Karen A. Randazzo and L. Robin Capozzi Waddell
v.
Wendell H. GAUTHIER and State Farm Fire & Casualty Company.
Nos. CA-0709, CA-0710.
Court of Appeal of Louisiana, Fourth Circuit.
November 10, 1983.
Rehearing Denied January 25, 1984.
Writ Denied February 16, 1984.
*1129 Gregory P. Di Leo, New Orleans, for plaintiffs-appellees, Margaret Barber, Richard T. McGawley, Karen A. Randazzo and L. Robin Capozzi Waddell.
Uhalt & Reck, Gothard J. Reck, Hugh C. Uhalt, New Orleans, for plaintiff-appellant, Rhonda Broome.
*1130 Porteous, Hainkel, Johnson & Sarpy, David J. Mitchell, New Orleans, for defendants-appellants, Wendell H. Gauthier and State Farm Fire & Cas. Co.
Before WARD, GULOTTA and BYRNES, JJ.
WARD, Judge.
These two consolidated lawsuits arose from a fire that began in rented residential premises in New Orleans at 4219 Canal Street and spread to the building at 4217 Canal Street. Plaintiff, Rhonda Broome, was the tenant of 4219 Canal Street. She filed suit against the owner-lessor, Wendell Gauthier, and his insurer, State Farm Fire and Casualty Company, to recover for property damage, physical injury, and mental suffering. Gauthier also owned the premises at 4217 Canal Street, which were damaged by the fire, and four tenants of that building, Margaret Barber, Karen Randazzo, Richard T. McGawley, and L. Robin Capozzi Waddell, filed suit against Gauthier and State Farm to recover for their property damage and the mental suffering each sustained. In the Broome suit, State Farm reconvened, alleging Broome's negligence as the cause of the fire and claiming subrogation rights for the amount it paid to Gauthier and its insured for his property losses from the fire.
Counsel for Barber, Randazzo, McGawley, and Waddell moved to consolidate their suit with Broome's. The motion was granted and the consolidated cases were tried before a jury.[1] At the close of the defendant's evidence, all plaintiffs moved for a directed verdict. On the issue of liability, the Court granted the Motion of Barber, Randazzo, McGawley, and Waddell, holding Gauthier and State Farm liable for their losses. Broome's motion for a directed verdict was denied. Broome, as a defendant in reconvention, then moved for a directed verdict and this motion was granted because the Trial Judge found that State Farm had not proven that she was negligent. The Judge then explained to the jury that because he had granted a directed verdict for plaintiffs on the issue of liability in the Barber, et al. case, the only matter left for their determination in that case would be the amount of damages. Thereafter, however, counsel for plaintiffs in Barber, et al. discovered an important procedural oversight: neither plaintiffs nor defendants in that case had requested a jury trial. Thus, counsel for Barber, et al. argued that damages should be decided by the Trial Judge. Over the strenuous objection of defendants, the Trial Judge instructed the jury that they were only to consider the case of Broome v. Gauthier and State Farm. He then struck the jury in the Barber, et al. case and decided the issue of quantum.
In Rhonda Broome v. Wendell Gauthier and State Farm, the jury rejected Broome's claims and she has appealed. In Margaret Barber, et al. v. Wendell Gauthier and State Farm Fire and Casualty Company, Gauthier and State Farm have appealed the Trial Judge's directed verdict against them.

THE JURY REQUEST
For the purposes of this opinion, we find it best to first consider Gauthier and State Farm's appeal and their contention that the Trial Judge erred when he struck the jury in Barber, et al. Gauthier and State Farm concede that neither they nor Barber, et al., requested trial by jury. They nonetheless contend that a jury request was implied when counsel filed the motion to consolidate Barber, et al. with Broome v. Gauthier in which a jury had been requested. We, however, do not believe that a motion to consolidate a non-jury case with a jury case is equivalent to a request for a jury trial.
Louisiana Code of Civil Procedure, Article 1732, provides that a request for *1131 trial by jury must be made not later than ten days after service of the last pleading directed to an issue triable by a jury. While a request may be included in the body of a petition or answer, see Trichel v. Caire, 395 So.2d 952 (La.App. 2nd Cir.1981) writ denied 300 So.2d 623 (La.1981); Guilbeau v. Mires, 263 So.2d 903, 262 La. 596 (La.1972), no particular format is required for a request, but it must be clearly indicated that a party desires a trial by jury. See Guilbeau v. Mires, supra.
A motion to consolidate does not suffice. Consolidation of actions is a procedural convenience designed to avoid multiplicity of actions. It does not cause a case to lose its status as a procedural entity during the trial. Howard v. Hercules-Gallion Co., 417 So.2d 508 (La.App. 1st Cir.1982). After consolidation each case must be procedurally correct. Rights peculiar to one case do not become applicable to a companion case by the mere fact of consolidation. Howard v. Hercules-Gallion Co., supra; Williams v. Scheinuk, 358 So.2d 340 (La.App. 4th Cir.1978); Burke v. State Farm Mutual Insurance Co., 234 So.2d 432 (La.App. 1st Cir.1970). Moreover, a motion to consolidate a non-jury case with a jury case results in a bifurcated trial, one tried by jury and the other by judge. Deville v. Town of Bunkie, 364 So.2d 1378 (La.App. 3rd Cir.1978), writ denied, 366 So.2d 564 (La.1979); Thorton v. Moran, 348 So.2d 79 (La.App. 1st Cir.1977) writ refused 350 So.2d 897, 898, writ denied 350 So.2d 900 (La.1977). In this instance, because there was no request for trial by jury, the Barber, et al. case was in the correct procedural posture to have been tried before the judge in a bifurcated trial.
Defendants also argue that objection to the jury trial was waived when counsel for Barber, et al. proceeded with the trial before the jury. They point out that Code of Procedure Article 964, which provides a procedural vehicle to strike a demand for trial by jury, also limits the time for filing this motion, and, they argue that in all events, the motion must be filed before trial. That Article, however, presupposes a demand has been made for trial by jury. In the Barber, et al. case no such demand was made. A motion to strike was unnecessary because at that time neither plaintiffs nor defendants were entitled to trial by jury. C.C.P. Art. 1732. Any jury verdict would have been of questionable validity. We believe the Trial Judge was correct when he refused to submit the question of damages to the jury.

THE DIRECTED VERDICT
The Trial Judge rendered a directed verdict on the issue of liability in favor of Barber, et al. at a time when he and all parties believed trial by jury was proper. Gauthier and State Farm argue that the Trial Judge erred and they maintain that the evidence will not support a directed verdict because reasonable men and women could disagree.
We have previously determined that the Trial Judge was the proper fact-finder, not the jury. Because of this, we conclude that the standard of review which defendants urge is not appropriate. Although he directed a verdict, the Trial Judge did so after presentation of all the evidence, and his judgment granting a directed verdict is more properly viewed as a judgment on the merits in a non-jury case. Therefore, the appropriate standard of review is not that applied to directed verdicts as urged by defendants, but rather is the standard applied to a finding of fact in a non-jury case: Are those factual findings manifestly erroneous? We believe they are not. For the reasons we will not discuss, we hold the Trial Judge's finding that Gauthier and State Farm are liable to Barber, et al. is not manifestly erroneous.

LIABILITY IN BARBER, ET AL.
The Trial Judge found that Barber, et al. were entitled to judgment under Louisiana Civil Code Article 2695 which provides:
The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used *1132 even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.
Ordinarily, for a lessee to recover damages from his lessor because of an alleged defect or vice in leased premises, the lessee must meet the burden of proving by a preponderance of the evidence that there was a defect or vice in the premises and that the defect or vice caused the damages or losses. Latham v. Aetna Casualty and Surety Company, 377 So.2d 350 (La.1979). Where a plaintiff can establish that the fire started in property owned by the defendant, but not occupied by the plaintiff, the burden of proof shifts to the owner to exculpate himself. Keller v. Kelley, 378 So.2d 1006 (La.App. 4th Cir.1979) writ denied 380 So.2d 624 (La.1980). The Trial Court found the case of Keller v. Kelley, supra, to be controlling because uncontested evidence established that the fire started in the apartment of Rhonda Broome and not in the building occupied by plaintiffs Barber, et al.
However, we question whether the tenants of 4217 Canal Street may base their action on C.C. Art. 2695. We interpret that Article to provide that the lessor guarantees the lessee against all vices and defects of the thing leased. The defect in this case is alleged to have been in the building leased to Rhonda Broome and not within the building leased to the tenants of 4217 Canal Street. Because the alleged defect is not within the thing leased to the tenants of 4217 Canal Street, their action would seem to be more appropriately based either on Civil Code Article 660 or 2322. Article 660 provides:
"[t]he owner is bound to keep his buildings in repair so that neither their fall nor that of any part of their materials may cause damage to a neighbor or to a passer-by. He is answerable for damages caused by his neglect to do so."
Civil Code Article 2322 also seems applicable and provides:
"[t]he owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction."
Nevertheless, we find the case of Keller v. Kelley to be controlling because in that case the fire did not begin in the thing leased to the plaintiff, but began in one of several other apartments of which the defendant was the lessor, and the alleged fault of the lessor was based on faulty materials; a vice encompassed within the meaning of Civil Code Articles 660 and 2322.[2]
Additionally, in the instant case, we find the relationship of the parties to be significant. Gauthier was the owner-lessor of the building in which the defect allegedly existed as well as the owner-lessor of the adjacent building at 2317 Canal Street. In Toussant v. Guice, 414 So.2d 850 (La.App. 4th Cir.1982), plaintiffs sued for damages sustained when a fire that began at the defendant's house spread to the neighboring house owned by the plaintiffs. This Court held that Keller v. Kelley was not applicable because the parties had no other relationship than that of ordinary adjacent landowners. In reference to Keller v. Kelley, this Court stated:
Keller is inapposite to the present case. There, the extraordinary burden of proof was imposed upon the defendant solely by virtue of the contractual relationship between defendant and plaintiff as lessor and lessee. That relationship carries its own special duties and obligations which do not apply to the relationship between ordinary adjacent landowners.
The parties in the instant case are not ordinary adjacent landowners: plaintiffs and the defendant have the contractual relationship *1133 of lessee and lessor, which "carries its own special duties and obligations." Thus, we conclude that Keller v. Kelley is applicable to the instant case.
The Trial Court found that the owner, Gauthier, had not shown by a preponderance of the evidence that the fire was not his fault. We have reviewed that finding to determine if it is manifestly erroneous and conclude that it is not.
The record shows that Gauthier and State Farm offered the testimony of two experts as to the cause of the fire. Mr. George Hero was qualified as an expert in electrical and mechanical engineering and the causation of fires. Mr. Hero candidly admitted that he was unable to discover the cause of the fire, although he was convinced that the fire originated in the living room of 4219 Canal. On cross examination, Mr. Hero stated that his investigation was hampered by the condition of the premises after the fire which could have rendered certain defects undiscoverable. Although he disagreed with various theories offered by plaintiffs experts, he did not present evidence of a cause independent of the owners fault. Mere disagreement with plaintiff's theories is not sufficient to exculpate the owner under Keller v. Kelley, supra.
The defense also offered the testimony of Harold Myers, a mechanical engineer who qualified as an expert in the field of origins and causes of fires. Mr. Myers was of the opinion that the fire began in the couch in Broome's living room. He offered no opinion as to causation, however, and frankly admitted that he did not know what caused the fire. Like the testimony of Hero, much of Myer's testimony consisted of disagreement with the various theories offered by plaintiffs' experts. This disagreement is not sufficient to exculpate the owner because the plaintiffs were not required to establish a defect. In Keller v. Kelley, neither party could establish the cause of the fire and judgment was rendered in favor of plaintiffs on the ground that the owner had not exculpated himself. Keller v. Kelley does not require that plaintiff prove a defect, but rather that the defendant prove by a preponderance of the evidence that the fire was not caused by his fault or neglect. Because the defendant's experts could not establish how the fire started, they could not establish that the cause was unrelated to the fault of the owner. There was much contradictory testimony as to where the fire began, but the weight of the evidence showing that the fire began somewhere other than in the couch, which was owned by Broome, supports the implied finding of the Trial Court that the fire originated in property owned by Gauthier. Thus, we find no manifest error in the holding of the Trial Court that Gauthier and State Farm failed to prove that the fire did not originate in Gauthier's property or that the fire was not caused by the fault of the owner.

LIABILITY IN BROOME V. GAUTHIER, ET AL.
Turning now to the first of these consolidated cases, Rhonda Broome v. Wendell Gauthier and State Farm Fire and Casualty Company, the jury returned a verdict in favor of defendants, finding that Broome had not proved the existence of a defect or negligence on the part of Gauthier. Because Broome lived in the apartment where the fire unquestionably began, she could not rely on the rule of Keller v. Kelley, and thus, was required to prove that a vice, defect, or the owner's negligence caused the loss she incurred. Latham v. Aetna Casualty and Surety Company, supra. On appeal, Broome argues that the verdict in favor of Gauthier and State Farm was clearly contrary to the law and evidence presented at trial. For the following reasons, we affirm the jury verdict in part and reverse it in part.
Broome's suit was based on strict liability under Civil Code Article 2695, supra, and on negligence under Civil Code Article 2315. Broome argues that the evidence proves that the fire began when gas leaking through a defective heater valve was ignited by the light switch on the wall in the living room. She also sought to prove *1134 the existence of statutory violations including improper placement of wall gas heaters, having a window, which was the alternate means of fire escape, bolted or otherwise sealed, and the absence of fire stops in a hollow beam which allegedly created a chimney effect that rapidly advanced the fire's progress.
To prove there was a defective heater valve and that leaking gas was ignited by an electric light switch, Broome introduced the testimony of Norwin Galiano who was qualified as an expert in fire investigation. He was one of the first firemen to arrive on the scene shortly after the fire began. He concluded that the fire started in the electrical switch, but could not testify that the switch was defective. He noticed nothing unusual about the outside fuse box and admitted that the breakers in the fuse box were not tripped, which indicated to him that there had been no arc or shorting in the writing of the building. Although he noticed charred wood around the gas heater, he did not believe that the fire started there and did not testify that he found evidence of a gas leak.
Broome's next expert was Joseph Leininger, an electrical engineer who specialized in determining the cause and origin of fires. He concluded that the fire began near the gas valve because of the heavy charring of the baseboards around the heater. He agreed with Galiano that a spark from the light switch could have ignited leaking gas which burned back to its source. On cross examination, Leininger stated that he found no evidence of an electrical shortage. He also admitted that he could not determine whether the valve was defective because of its melted condition after the fire, and he testified that no tests could be performed to determine if the valve was leaking at the time of the fire. Although various non-expert witnesses said that they heard an explosion in Broome's apartment, Leininger found no evidence of an explosion. Mr. Meyers, one of the defendant's experts, explained that there would have been an explosion if the fire had originated from leaking gas. However, neither he nor Mr. Leininger found evidence of an explosion. He attributed accounts of a loud noise to the normal roar of a fire or perhaps a smoke explosion. Hero, the other expert for the defense, was also of the opinion that there had been no explosion due to leaking gas.
The experts for the defense, Hero and Myers, found no evidence of an electrical shortage. Hero pointed out that the fire was within the room, rather than within the walls around the wiring. Myers was of the opinion that the fire began in the couch, due to the melted condition of the springs and heavy charring pattern above the couch, although he did not offer an opinion as to the probable cause of the fire. He attributed the heavy charring of the baseboards to the new varnish on the floors of the recently renovated apartment. He found no evidence that would indicate a defect in the heater.
We conclude that there was sufficient evidence to support the jury's apparent rejection of Broome's theory that the fire began when leaking gas was ignited by the electric light switch. Because of the inconclusive and conflicting testimony of the experts, we cannot say that Broome proved a vice, defect, or negligence by a preponderance of the evidence regarding the heater or light switch.
We now review Broome's argument that the evidence proved several statutory violations by Gauthier, which Broome argues, constitute negligence.[3] In R.S. *1135 40:1578.6, the Life Safety Code of the National Fire Protection Association (1976 edition) was adopted as a minimum safety standard. Section 11-6.4.1.1 of the Life Safety Code provides that "[n]o stove or combustion heater shall be so located as to block escape in case of fire arising from malfunctioning of the stove or heater." Mr. Leininger testified that, should a heater malfunction near the corridor leading from the rear room of Broome's apartment to the front porch, that corridor would be blocked as an escape route. Standard 11-6.4.1.1 is applicable "in case of fire arising from malfunctioning of the ... heater." Broome did not prove a malfunction of the heater as a cause of the fire. The evidence only established that the fire began in the rear room. Thus, we find no manifest error in the jury's determination that a violation of this standard did not contribute to Broome's losses.
Broome alleges a statutory violation in the absence of fire stops in a hollow beam which allegedly allowed a chimney effect to rapidly advance the fire's progress. Article 2526 of the Building Code of the City of New Orleans provides that "[f]ire-stopping shall be provided to cut off all concealed draft openings, and form an effective fire barrier between stories and between a top story and the roof space. It shall be used ... in all stud walls and partitions, including furred spaces, so placed that the maximum dimension of any concealed space is not over ten feet.... [and in] shafting which could afford a passage for flames." Broome's expert, Galiano, testified that the wall light switch was in a hollow beam lacking fire stops and that fire stops could have retarded the fire somewhat. Broome's other expert, Leininger, also thought the regulation to be applicable to the hollow beam. Gauthier and State Farm's expert, Myers, disagreed. He testified that fire stops were only required every ten feet and that, because the ceiling of Broome's apartment was not more than ten feet high, stops were not required except between stories or between a top story and the roof space. Myers stated that there were fire stops at the floor and ceiling. The testimony of Myers constitutes a reasonable factual basis for the jury's verdict in favor of defendant and, considering the conflicting interpretations of the standard which were presented to the jury, we cannot find that the jury's application or interpretation of the standard is clearly erroneous.
The last defect alleged by Broome pertains to the lack of a second means of escape from her apartment. Section 11-6.2.1.1 of the Life Safety Code provides that in any dwelling of more than two rooms, every bedroom and living room area shall have at least two means of escape. Section 11-6.2.2.1 requires that the second means shall be a door or stairway or "[a]n outside window openable from the inside without the use of tools...." Uncontradicted evidence shows that the window in Broome's bedroom was nailed shut. A neighbor who rescued Broome, Julio Barquero, testified that he and his brother broke three frames of glass in order to get Broome out of the apartment through the window. Broome sustained severe cuts on her right leg, which left scars the Trial Judge described as "quite noticable."
We are unable to find any evidentiary basis for the jury's rejection of the *1136 claim that the window was nailed closed and that it constituted a violation of the Life Safety Code which amounted to a vice, defect, or negligence which contributed to Broome's damages. Accordingly, we reverse that portion of the jury verdict and hold that Broome is entitled to damages for losses which resulted from the violation of the Code.

QUANTUM IN BROOME
The record contains sufficient evidence to assess the damages attributable to the violation. See C.C.P. Art. 2164; Boyette v. Auger Timber Co., 403 So.2d 800 (La.App. 2nd Cir.1981), writ denied 407 So.2d 731 (La.1981). Medical bills incurred by Broome amounted to three thousand, four hundred and seventy-six dollars. ($3,476.00). She is entitled to an award of special damages in this amount. Broome's plastic surgeon, Dr. Earl Peacock, testified that she will have a permanent scar on her right leg. As compensation for her disfigurement, pain and suffering, Broome is entitled to an award of general damages in the amount of seven thousand, five hundred and no/100 ($7,500.00) dollars. See Bacile v. Parish of Jefferson, 411 So.2d 1088 (La.App. 4th Cir.1981) writ denied 415 So.2d 950 (La.1982).

QUANTUM IN BARBER, ET AL.
The final issue for our determination is whether the Trial Court abused its discretion in its quantum awards to Barber, McGawley, Randazzo and Waddell. An appellate court may disturb a damage award on appeal only where an abuse of discretion is apparent on the record. Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1976).
The Trial Judge's assessment of each plaintiff's damages is explained in his extensive reasons for judgment:
The petitioners' testimony regarding their property damages and accompanying mental anguish was totally uncontested and unimpeached. Each of the petitioners offered proof, in the form of detailed property lists, of the items that each lost in the fire. Each petitioner offered two lists, one indicating actual purchase prices of the items at the times and places of the purchases, and the other stating the present replacement costs at the time of trial of those same items. Each petitioner testified as to the accuracy of his list. It is noted that at no time did the defendants challenge the contents of the lists with any rebuttal or impeachment evidence.
All of the lists of petitioners indicated contents of household furniture, personal items and some items of great sentimental value. Each of the four petitioners lost virtually all he or she had to his or her name.
The first petitioner to testify was Robin Capozzi, who stated that she is a student worker, who lost approximately $9,705.30 in property at its replacement cost. The greater part of Ms. Capozzi's loss consisted of new clothing. However, she also testified as to the loss of an antique French dictionary and her wedding pictures, which were worth more to petitioner than their replacement costs, since they were irreplaceable.
The second petitioner to testify was Mrs. Margaret Barber, the oldest of the four petitioners, a secretary, who lost virtually all she owned in the fire, amounting to approximately $24,420.00 at the replacement cost. Her property included household goods, china, crystal and her largest loss, sterling silverware. The existence of the silver, as well as that of other items, was corroborated by another witness, petitioner Robin Capozzi, who used to help Mrs. Barber polish the silver. Exhibits of remaining china, crystal and silver were offered into evidence, whose costs were supported by testimony and price lists.
The third petitioner to testify was Mr. Richard T. McGawley, a stock boy at a local grocery store. He lost approximately $4,600.00 in property at its replacement cost. Clothes and a new stereo made up the bulk of Mr. McGawley's property loss. His losses were also corroborated by the other witnesses.
*1137 The fourth petitioner to testify was Karen A. Randazzo, a school teacher, who, like the other petitioners, lost all she had in the fire, amounting to $7,995.00 at the replacement cost. Furniture and clothing made up most of her loss. Her losses were also corroborated by other witnesses. Like the other petitioners, Ms. Randazzo lost items which were virtually priceless and of great sentimental value. Through her testimony and corroborative testimony she, like the other petitioners, established her mental damages.

* * * * * *
Depreciation should play no part in petitioners' award. There is no mechanical rule which can be applied with exactitude in the assessment of property damage. Each case must rest on its own facts and circumstances as supported by proof in the record. Kalmn, Inc. v. [Empiregas] Empiregos Corp., 406 So.2d 276 (La.App.3d Cir.1981). What is more important in the Court's determination to take the petitioners' property loss at their replacement costs was that the defendants offered no proof whatsoever as to what reasonable depreciation costs would or should be. Given the circumstances of the evidence as presented, the plaintiffs should be awarded the estimated replacement costs of the lost property.

* * * * * *
This Court, while specifically aware of the weight of jurisprudence denying a petitioner damages for mental anguish due to property loss is of the opinion that the instant case is one deserving more careful analysis than an automatic denial of such damages. This is not a case of mental anguish unsupported by any substantial evidence as was in Perez v. Allstate Insurance Company, 407 So.2d 512 (La.App. 4th Cir.1981). Nor is this case one of normal or minimal worry or inconvenience to the petitioners as a consequence of their property damages as was in Farr v. Johnson, [308 So.2d [884] 804 (La.App. 2d Cir.1975), writ denied, 315 So.2d 143 (La.1975).] Damages for mental anguish are recoverable in tort actions. Gele v. Markey, 387 So.2d 1162, (La.1980). The facts in evidence justify an award for emotional distress and mental anguish suffered by each of the four petitioners by reason of witnessing their belongings burn and subsequently trying to resume a normal life without those belongings. Jackson v. International Paper Company, 163 So.2d 362 (La.App. 3d Cir.1964); Jackson v. United States Fidelity & Guaranty Company, 382 So.2d 223 (La.App. 3d Cir.1980). After scrutinizing carefully the evidence in support of each petitioner's claim, the Court is of the opinion that mental damages are appropriate in the instant case. Damages for mental suffering are compensable, but due to its nebulous character, the Court must proceed with the utmost caution and scrutinize carefully evidence in support of such a claim. However, the danger of denying recovery to a deserving claimant must be guarded against with equal enthusiasm. Jackson v. United States Fidelity & Guaranty Company, supra. These petitioners are such deserving claimants.
There are three reasons why this Court awards mental damages to these petitioners who suffered only property damages.
First, these petitioners' properties were damaged by acts giving rise to strict liability. Such a situation makes their award for mental damages allowable. Farr, supra.
Second, these petitioners were all eye witnesses to their losses. All four of them were within feet of the fire, which consumed all they owned. This is also a legal basis for allowing mental anguish for property loss. Farr, supra. See also, [First of Georgia Insurance Company v. Cohen, 398 So.2d 1209 (La.App. 4th Cir.1981).] No expert testimony is needed to corroborate the losses suffered when one witnesses his entire stock in life being swept away forever, while left standing only in his night clothes, helpless against the onslaught of the fire's rude awakening. Nor is expert testimony needed to corroborate the loss one would necessarily feel in trying to pick up the pieces of a life shattered by losing everything one owned. These losses were far greater than mere inconvenience or normal *1138 worry. These four petitioners suffered real psychic trauma as a result of the fire. Each testified about the shock incurred during the fire and the anguish suffered for months afterward.
Third, each petitioner's loss involved certain irreplaceable items and circumstances which require compensation in addition to the replacement cost of the goods lost. Margaret Barber lost her wedding silver. She also lost the china place servings left to her at her mother's death. Great sentimental value was involved. Moreover, Mrs. Barber, of advancing middle age, and having a pre-existing nervous condition, corroborated by other testimony, suffered and continues to suffer from the anguish produced by sleepless nights. Mrs. Barber testified that she often had nightmares about the fire. Since such misery is beyond normal worry or inconvenience, Mrs. Barber suffered real psychic trauma. Such a loss is compensable.
Karen A. Randazzo, in addition to mental losses, previously mentioned, lost three irreplaceable items of great sentimental value. Ms. Randazzo, who lost her mother at a tender age, was left with only three remembrances of her: A wedding picture and two antique lamps. This loss was also corroborated. No expert testimony is needed to further evidence the continuing loss which Ms. Randazzo felt, in that she lost all she had to remind her of her mother. Such misery is beyond normal inconvenience or minimal worry. Ms. Randazzo suffered a real psychic loss. Such a loss is compensable.
Richard T. McGawley also suffered mental damages due to the fire. Medical records corroborated his testimony that Mr. McGawley suffered two mental breakdowns in the year preceding the fire. The apartment he lived in was apparently the first place and time he was on his own since those breakdowns. The facts speak for themselves that a setback undoubtedly occurred to Mr. McGawley because of his loss. This is also compensable.
Robin Capozzi testified as to her condition of shock during and after the fire, further corroborated by other witnesses. She, too, lost irreplaceable items, such as her own wedding pictures. More important, though, was the loss she sustained after the fire. Testimony was clear that Ms. Capozzi was without any family in the city and was working her way through school. Testimony indicated that this total property loss, in her situation, left her with a decreased sense of security, self-esteem, ambition and drive. This too, was corroborated by another witness. Ms. Capozzi testified that she had mid-term exams the day after the fire, which she missed. Ms. Capozzi was required to move two to three times in the next six months because of the fire. She had no furniture nor money to buy furniture. She, therefore, had to resort to the charity of others to help her. For a number of weeks, she testified, she had to sleep on sheets because she had no bed. This hardship entails more than mere inconvenience or normal worry. Therefore, her loss is also compensable.
The testimony was undisputed that these fire victims suffered mental damages which are compensable in the eyes of the law. The scars left by such a fire are just as painful, although invisible, as if caused by the flames themselves.
For the above reasons, the Trial Court made the following awards:

For property damage:
Margaret Barber $24,420.00
Karen Randazzo $ 7,995.00
Richard McGawley $ 4,600.00
Robin Capozzi $ 9,705.00
For mental damage:
Margaret Barber $ 8,000.00
Karen Randazzo $10,000.00
Richard McGawley $ 7,000.00
Robin Capozzi $ 7,000.00

In sum, although mental anguish, pain, and suffering caused by loss of property is not usually compensable by an award of damages, damages may be awarded, as in this case, when an owner is present to see and experience the destruction of his property. First of Georgia Insurance Company v. Cohen, 398 So.2d 1209 (La.App. 4th Cir.1981).
*1139 We believe this adequately distinguishes those cases which deny compensation for mental anguish, pain and suffering resulting merely from a loss of property. The record clearly supports the Trial Judge's Reasons for Judgment. We find that the awards do not constitute an abuse of the much discretion of the Trial Judge in assessing damages. Accordingly, the awards are affirmed.
The judgment in favor of the four tenants of 4217 Canal Street is affirmed. The judgment in favor of Gauthier and State Farm in the Broome case is affirmed in part and reversed in part. Rhonda Broome is hereby awarded $10,976.00 in special and general damages.

ON APPLICATION FOR REHEARING
PER CURIAM.
In an application for rehearing, Counsel for Rhonda Broome requests this Court to amend its judgment to provide for legal interest on the amount awarded Miss Broome in that judgment from the date of judicial demand until paid. He also seeks an assessment of court costs.
Although the judgment of this Court is silent regarding legal interest, La. R.S. 13:4203 provides that "[L]egal interest shall attach from date of judicial demand, on all judgments, sounding in damages, `ex delicto'...." Interest attaches automatically until the judgment is paid in actions ex delicto whether prayed for in the petition or mentioned in the judgment. Thus, Miss Broome is entitled to be paid legal interest without a formal amendment of our decree. Steele v. St. Paul Fire & Marine Insurance Co., 371 So.2d 843 (La. App. 3rd Cir.1979). Therefore, the rehearing application filed on behalf of Miss Broome is denied.
Costs of the trial and appellate courts are to be paid by defendants, Gauthier and State Farm Fire and Casualty Company. See La.C.C.P. Arts. 1920, 2164 and Hall v. Mid-American Casualty Co., 413 So.2d 640 (La.App. 1st Cir.1982).
NOTES
[1] In her answer to State Farm's reconventional demand, Broome had requested a jury trial. At the start of the case, however, Broome indicated that she wished to waive that right. Counsel for Gauthier and State Farm then requested a jury trial and paid the statutory jury fee pursuant to R.S. 13:3105.
[2] Although Keller v. Kelley inadvertently cites Article 670, the quoted text of the Article referred to is that of Article 660. See 378 So.2d 1006, at 1008.
[3] Broome alleges as error the district court's failure to instruct the jury that the defendant's violation of statutory safety standards was negligence per se or at least some evidence of negligence. We need not consider this assignment of error because even if the trial court erred in failing to give special instructions, this court is empowered to decide the case on the record. See Hebert v. Gulf States Utilities, 395 So.2d 832 (La.App. 1st Cir.1981). Broome also complains that the jury interrogatory dealing with defendant's strict liability failed to state all of her claims under C.C. Article 2695. Specifically, she complains of the omission of the word "vice" from the interrogatory which read, "[W]as there a defect or vice in the property of defendant. Wendell Gauthier, and that said defect caused the damages to plaintiff, Rhonda Broome?" As with the assignment of error regarding improper instruction, we need not address this issue because even if error is found in the interrogatory, the appellate court may review facts in the record and affirm the verdict if it is consistent with the evidence. Andry v. Kinberger, 364 So.2d 613 (La.App. 4th Cir.1978). Plaintiff additionally argues that the jury was prejudiced by the cumulative nature of defendant's expert testimony. Cumulative evidence is that which goes to prove what has already been established by other evidence. Saia Motor Freight Line, Inc. v. Louisiana Public Service Commission, 248 La. 1, 176 So.2d 408 (La.1965). The record reveals that, although the testimony of the defendants second expert, Myers, was repetitive of Hero's testimony to some extent, only Myers offered the opinion that the fire began in the couch. Thus, the admission of his testimony was within the discretion of the Trial Judge and does not constitute error.