SCHOTT, Chief Judge.
In these consolidated cases the owner of a double house, Dr. Bobby Wade Saucier, his subrogated fire insurer, Fireman’s Fund Insurance Company, and the resident tenant, Bertha Edwards, filed suits against the gas company, New Orleans Public Service, Inc. (NOPSI), for damages caused by a fire on the premises. The plaintiffs prevailed after a jury trial, and NOPSI has appealed. The issues are whether the evidence was sufficient to establish that the fire was caused by a gas leak at the meter and whether the trial court abused its discretion in the amounts awarded to Edwards.
On January 24, 1984 a fire heavily damaged the side of the house occupied by Edwards. The fire was largely confined to the front living room. There were front and side doors to the living room. Next to the front door was a window, and below the window outside were two NOPSI gas meters. Next to the side entrance was a wall heater without a handle to turn it on or off. Separated from the living room by a bar was the kitchen where a gas range and refrigerator were located.
On the morning of the fire Edwards had just left and gone to her mother’s house nearby when a boy knocked on the door and reported that her house was on fire. When she left her house she smelled gas and went to her mother’s house to report the leak to NOPSI. She testified that she smelled gas in the house several days before the fire and reported it to NOPSI. She also called her landlord, Saucier, who testified that he reported the leak to NOPSI two days before the fire. Edwards’ live-in boyfriend and her father also testified to the smell of gas in the days before the fire. There was evidence that NOPSI made two service calls in this period of time. NOPSI offered nothing to refute this evidence.
Edwards, her boyfriend and her father testified that the wall heater never operated. The father, a maintenance man with the public housing authority for thirty years, twice checked the wall heater and the gas range shortly before the fire and found no leaks. The boyfriend who left the house shortly before Edwards on the day of the fire said the front window over the meters and the side window were cracked open. The father testified that while at the burning house before the firemen arrived he entered the side door and crawled right next to the wall heater which was not burning even though much of the living room was on fire. After the fire was extinguished the father saw an unidentified man tightening a pipe feeding the gas meters.
Plaintiffs called George Hero, III as an expert in the cause and origin of fires. Based upon his visual examination of the premises including smoke damage and burn patterns he thought the source was natural gas and not some smoldering object such as a burning cigarette. He ruled out the wall heater as the source of the gas because of the nature of the fire damage in the vicinity of the heater. In his opinion the source of the gas and the fire was one of the meters based upon the facts that one meter sustained heavy damage compared to the other; it was just beneath the window cracked open with the wind direction at the time toward the front of the house; and the evidence that someone was seen tightening the meter connection after the fire. He stated that a three quarters of an inch gas line could leak a sufficient quantity of gas into the house to fuel a flash fire ignited by the pilot on the range or an electric spark. Such a fire would have blown the windows out but left knick knacks standing on the shelvers as was the situation after the fire. The amount of gas necessary for such a flash fire was not as much as would cause an explosion.
NOPSI called an expert who flatly refuted the theory that the fire was caused by gas from a leaking meter. He insisted that *841 any buildup of gas subject to ignition by the pilot or refrigerator would have blown the house to bits. He thought the fire started either from an object in the apartment or in the wall behind the heater.
In the final analysis the outcome of this case depended upon the jury’s the evaluation of the expert testimony. Just as questions of credibility are for the trier of fact so to is the evaluation of expert testimony, unless the stated reasons of the expert are patently unsound. Lirette v. State Farm Ins. Co., 563 So.2d 850, 853 (La.1990). We cannot conclude that the reasons given by plaintiffs’ expert for his opinion are patently unsound. NOPSI’s arguments as to liability are without merit.
Turning to the amount awarded Edwards the jury gave her $30,000 for general damages and $8,961 for property lost in the fire. She had a weakened heart resulting from rheumatic fever as a child and she suffers with syddingham’s choreia, a condition which causes shaking. After the fire she was taken to Charity Hospital and was given a sedative. According to her testimony she was upset and her shaking was aggravated for a month after the fire. She stated that the fire and attendant loss of her things “really upset” her. Asked how long this upset state lasted she replied, “It took me about three or four months before I got really back to normal.” Asked the next question, “Three are four months later you were okay?”, she replied, “Yes.” There was no medical evidence, no economic losses, and no evidence of any disability beyond four months. The award of $30,-000 constitutes a clear abuse of discretion by the jury. Plaintiff relies on the cause of Broome v. Gauthier, 443 So.2d 1127 (La.App. 4th Cir.1983), writ denied, 445 So.2d 449, but in that case Karen Randazzo, whose damages were similar to plaintiff’s the instant case, was awarded only $10,000. We find from the record that the maximum the jury could award Edwards within its range of discretion was $15,000 and the judgment will be reduced accordingly.
As to the award for lost property Edwards presented a list of her things and explained that her bills and receipts had been destroyed in the fire. She stated that the values were based upon her recollection and were discounted for depreciation. NOPSI offered nothing in rebuttal. We find no abuse of discretion in this award.
For the foregoing reasons the judgments appealed from are affirmed in all respects except that the award in favor of Bertha Edwards is reduced to $23,961. All costs are taxed against NOPSI including costs of this appeal.
AMENDED AND AFFIRMED.