## HOLLOMAN v. JEFFERSON STANDARD LIFE INS. CO.

### No. 5770.

Court of Appeal of Louisiana. Second Circuit.

March 8, 1939.

Rehearing Denied March 31, 1939.

Harry V. Booth and L. L. Lockard, both of Shreveport, for appellant.

Blanchard, Goldstein, Walker & O'Quin and Ben C. Dawkins, Jr., all of Shreveport, for appellee.

TALIAFERRO, Judge.

On August 15, 1935, defendant issued to Joseph Gerald Holloman a policy of ordinary life insurance for $1,000 in which his wife, plaintiff herein, is named beneficiary. The insured was then in the employ of the Victoria Sash & Door Company, located in the city of Shreveport, herein referred to as the Company. At the same time a dozen or more of said Company's employees effected like insurance with defendant. All of them, including Holloman, subscribed to the "Salary Savings Franchise" agreement which defendant was offering and made available under such policies. By this agreement each insured authorized the employer to deduct from his compensation and transmit to the insurer the premiums as they fell due. Holloman desired to pay his premiums monthly. The monthly amount was fixed at $1.91. It was due on the 15th of each month. A grace

period of one month for the payment of each installment was stipulated in the policy. It contains the additional provision that so long as the premiums were paid monthly, "notice of any premium or installment due" was waived. The insured was given the right to abrogate said mode of payment of premiums and to personally assume the duty of discharging same.

The modus operandi under said agreement was this: in the early part of each month, defendant would make up what is referred to as an invoice or deduction list containing the name of each insured who was due a premium for that month, with the amount thereof, and forward same by mail to the Company. The amount was then supposed to be deducted by the Company from the wages or salary due to the insured and immediately forwarded to the insurer's office in New Orleans. A slip showing the name of the insured, the number of his policy, the amount of premium and date due, was delivered to the insured. This was his receipt.

The insurance policy also contains a stipulation whereby the insurer agreed to pay to the designated beneficiary, in event of the death of the assured "through external, violent and accidental means," etc., an additional amount equal to the face of the policy.

Joseph Gerald Holloman, the assured, was injured in an automobile collision on January 15, 1937, from which he died two days later. His widow, the beneficiary, instituted this suit to recover double the face of the policy. The insurer has consistently denied liability.

The last premium paid under the policy was made on October 15, 1936. All premiums due to that date were paid but some payments were not made within the "grace period". The installment due December 15, 1935, was paid on January 22, 1936, or seven days late. The installment due February 15, 1936, was paid on March 21, 1936, or six days late. The installment due April 15, 1936, was paid on May 22, 1936, or seven days late and the installment due July 15, 1936, was paid on August 19, 1936, or four days late. As a condition precedent to acceptance of the second and third of the above named overdue payments, defendant required the insured to execute formal applications for reinstatement of the policy which was declared therein to have lapsed on account of non-payment of the premiums when due nor within the grace period. No such application was required prior to acceptance of delinquent premiums in the other two instances.

On the face of the record the policy lapsed on the 15th day of December, 1936, thirty-three days prior to Holloman's death (for non-payment of premium due November 15th). Plaintiff contends that the right to declare the policy forfeited on account of non-payment of said premium was waived by defendant. We epitomize, so far as necessary, the allegations of her petition designed to circumvent the apparent obstacles to the success of her suit:

That the Company depended upon defendant to provide it with information pertinent to the status of all of said policies, and required defendant to furnish it with a monthly deduction list, including the deduction to be made from the salary or wage of said insured; that defendant followed the invariable practice of sending this information to the Company by a collector or by mailing the same "when and as they pleased"; that when said list was received by the Company proper deductions were made from the assured's salary or wages to cover the premiums due, the total of which being then delivered to defendant's collector or immediately mailed to it; that no deductions whatever were made by the Company until it was presented with said deduction list; that for reasons unknown to petitioner, defendant, for more than one-half of the time, did not present said deduction list to the Company for monthly premium payments by Holloman until after such payments were past due and the "grace period" had elapsed.

That the Company invariably made deductions on the day or the following day on which a deduction list was furnished it under the policy issued to Holloman; that the tardy delivery to the Company of said deduction lists caused the policy holders much uneasiness and annoyance about which they registered many complaints with defendant without effect.

That the insured tried to obtain a monthly deduction from his salary or wages at all times to pay premiums due by him, including the months of November and December, 1936, and January, 1937; and during said months he had wages in the hands of his employer, the Company, sufficient to discharge said premiums.

502

It is further alleged:

"16. That this long continued practice of delayed collection of these premiums without exacting a reinstatement or any formality was calculated to deceive and did deceive the insured into the honest belief that the defendant not only waived the monthly payment of premiums according to the terms of the policy, but it actually desired that the payments be made at greater intervals than thirty days and that no forfeiture of the rights of the insured or his beneficiary would occur by the delayed payments of the premiums.

"17. That by reason of its conduct and of its representations and course of action in accepting delayed premium payments, as hereinbefore described, the defendant is legally and equitably estopped to claim the forfeiture of this policy for non-payment of premiums when due and, plaintiff especially pleads estoppel against defendant."

In an amended petition it is alleged that on the day following Holloman's death, a tender to defendant's local agent of the premiums then past due on the policy was refused; that defendant from said date has held to the position that the policy had lapsed.

Defendant, after admitting issuance of the policy, payment of premiums thereunder as above mentioned and the death of the assured, denied generally and specially the other allegations of the petition. It specially pleaded that the deduction lists, above referred to, were regularly mailed or sent to the employer company in the early part of each month, many days prior to the maturity of monthly premiums under the policy; that notwithstanding timely reception by it of said lists, said Company repeatedly, carelessly and negligently failed to remit promptly to defendant for premiums when they were due or within the grace periods, and that despite repeated complaints and warnings made by defendant to said Company and its agents, on several occasions it permitted various of the policies to lapse, including that issued to said Holloman.

It is specifically alleged that the policy in question lapsed on December 15, 1936, for non-payment of the premium, all because of the negligence of the employer Company, the assured's agent, in failing to remit said premium to defendant and this too after being advised by defendant that the premium was due.

Plaintiff's demands were rejected and she has appealed.

The sole question in the case is whether defendant, by its acceptance of overdue premiums in the manner and at the times related above, has waived the right to declare the policy forfeited for nonpayment of the premium due November 15, 1936. We do not think it has done so.

We are convinced from the testimony bearing thereon that defendant's New Orleans office, in the early part of each month, transmitted by mail to the employer Company the deduction lists and slips discussed herein. Not only the preponderance of the testimony supports this conclusion, but common sense and reason do likewise. Defendant is a large insurance company. Competition is keen and active in that field. Its success largely depends upon close attention to business details and prompt collection of premiums due under its policy contracts. The duty devolved upon the employer's cashier to make monthly remittances to defendant of the premiums deducted from each assured's salary. The lists and slips were delivered into his hands for that purpose. The Company changed cashiers on January 1, 1936, and the four lapses in the policy occurred thereafter. This cashier in the beginning testified that invariably he would make the deductions and remit the total thereof to defendant within twenty-four hours after receiving a deduction list. He afterward modified this statement by equivocating. Other witnesses contradict him on the point. More than once, in fact several times, defendant's local representatives either phoned to or called on him personally and urged him to remit deductions to defendant in order to save policies from lapsing. This would be done toward the end of the grace period. The local representatives were directed to contact the cashier in such circumstances by the New Orleans office. At times the cashier would deliver a check for the premiums to the local agent calling on him.

There is no doubt that the assured each month, up to the time of his injury and death, had wages accumulated in his employer's hands sufficient to pay his premiums. He was dissatisfied over the irregular manner the premiums were paid. He

discussed this with plaintiff. She testified that they thought the policy was kept in force "because we did not have anything to do with it personally and it was for the Company to take it out of his salary, so I never bothered about it." However, she admitted that she and her husband knew that the premiums due in November and December, 1936, had not been deducted from his salary for these months. She did not think anything of this "because it had been late several times". They always knew when the premiums were taken out of the monthly salary. She had no knowledge of the two occasions the policy was reinstated after lapsing.

■ Forfeitures of insurance policies are frowned upon by the law. Courts generally are disposed to "lean backward" in their desire to uphold the integrity of a policy when there exists equitable grounds for doing so. No citation of authority is necessary to support. the proposition that an insurer by a course of conduct, a series of actions, may effectually hold in force a policy contract although a particular premium be not tendered for payment until after the lapse of all periods under the policy in which it should have been paid. Crease v. Liberty Industrial Life Insurance Company, La.App., 151 So. 89, and authorities therein cited. However, in such instances, it must fairly and reasonably appear that the insurer intended, tacitly or otherwise, to waive the right it initially had to declare the policy forfeited. It is the uniform rule that no one act of the insurer, indicative of a purpose to waive the right to declare the policy forfeited, will establish a custom or fixed rule in that respect.

In the present case, defendant ignored the lapsing of the policy the first time. Thereafter, in two instances, it required the assured to apply for reinstatement. This was not required when it lapsed the fourth time probably because the payment of the premium was made only four days after the expiration of the grace period.

■ We do not think the assured, in view of these facts and .circumstances, was warranted in assuming that the policy would remain in force notwithstanding the non-payment of premiums within the grace period; and especially should this be true when he positively knew no premium had been paid for his account for two months. He had not the right in these circumstances to remain passive over this period and assume that conditions would continue favorable to him. He should have called upon his employer for an explanation and otherwise taken such steps as were needful to preserve and protect his rights. He had the right to abrogate the original agreement and to personally make such payments. The very fact that reinstatements were twice required should have definitely impressed upon his mind that the insurer had not waived its right to require that the premiums be paid before the grace period expired. The fact that a reinstatement application was not demanded in the fourth instance did not have the effect of effacing from the policy the stipulation requiring timely payment of all premiums as a condition precedent to the continued life of the policy. It cannot reasonably be deduced from defendant's attitude, in the respects mentioned, that a custom was established whereby the premiums could be paid after the grace period had expired and the contract thereby kept in effect. Defendant's action amounted to nothing more than an indulgence. To so concede does not imply to any degree that it would be repeated for much longer periods. It so happens in this case that no premiums whatsoever were tendered for payment after that of October 15, 1936. The allegation contra is not proven.

14 Ruling Case Law, 1184, 1185, expounds the rule in cases of this character to be,—"To warrant a recovery where a premium is not paid when due, it is necessary to prove (1) the course of dealing between the insured and insurer, in reference to the acceptance of overdue payments amounting to a custom or habit; (2) that by reason of this course of dealing, the insured was justified in believing that the insurer would not insist on a forfeiture for failing to pay subsequent premiums; (3) that the insured believed he could postpone the payment of premiums without risking a forfeiture; and (4) that he acted on this belief, and therefore did not pay the premium at its maturity. * * * The acceptance of a single overdue premium, of course, establishes no custom, and the same is true of the acceptance of a comparatively few of a large number of premiums after they are but a few days overdue." See 32 Corpus Juris, 1348.

In Thompson v. Knickerbocker Life Insurance Company, 104 U.S. 252, 260, 26 L.Ed. 765, 768, the Court, in discussing the

policy forfeiture involved therein, inter alia, said:

"But a fatal objection to the entire case set up by the plaintiff is, that payment of the premium note in question has never been made or tendered at any time. There might possibly be more plausibility in the plea of former indulgence and days of grace allowed, if payment had been tendered within the limited period of such indulgence. But this has never been done. The plaintiff has, therefore, failed to make a case for obviating and superseding the forfeiture of the policy, even if the circumstances relied on had been sufficiently favorable to lay the ground for it. A valid excuse for not paying promptly on the particular day, is a different thing from an excuse for not paying at all. * * *

"It is always open for the insured to show a waiver of the condition, or a course of conduct on the part of the insurer which gave him just and reasonable ground to infer that a forfeiture would not be exacted. But it must be a just and reasonable ground; one on which the assured has a right to rely."

It is said in brief that the defendant instituted the employer company its agent when it agreed that the company should collect and remit to defendant the premiums due by the employees, and that if the agent failed to collect, or remit after collecting the premium, defendant is responsible therefor; that the blame may not be visited upon the assured. We do not think this contention sound. It may be said, rather, that the insured employees made their employer their agent for the purpose of deducting and remitting to defendant amounts sufficient to pay the monthly premiums. It was the duty of the assured to pay the premiums or see that they were paid, not that of the insurer to force him to do so or to elect an exclusive method whereby such payments would be timely made. The "Salary Savings Franchise" agreement was designed more especially for the benefit of the assured. By and through its operation premiums were to be paid from his earnings by the employer in the capacity of agent.

No case directly in point has been cited by counsel or discovered by us. Analogous is that of Boseman v. Connecticut General Life Insurance Company, 301 U.S. 196, 206, 57 S.Ct. 686, 81 L.Ed. 1036, 110 A. L.R. 732. The Court therein had before it a group insurance policy, commonly availed of this day and time by employees and employer. The syllabus on this point reads: "Employers, in doing the various acts required to make effective a policy of group insurance covering employees, such as obtaining the employees' applications, taking payroll deduction orders, reporting changes in the insured group, paying premiums, etc., act for themselves and their employees and not as agents of the insurer."

It seems to us that there is little or no difference in principle, as regards the question of agency, between a group policy and the sort we are discussing.

The footnote to the Boseman case lists over half a dozen cases from state jurisdictions which sustain the principle therein announced.

T. W. Hearne, a former agent of the defendant, testified that he handled the application for reinstatement of the policy for non-payment of the premium due April 15, 1936, and that he thought he collected $3.92 from the company at the time, or two months' premiums. He had ceased his connection with defendant several months when the case was tried and therefore his recollection of some of the details of the transaction were not clear in his mind. After refreshing his memory from contemporaneous records, he was able to testify that he only collected one month's premium in connection with the application. Plaintiff seized upon this witness' statement about collecting $3.92 and argues therefrom that $1.91 paid him has not been accounted for; that if it is taken into consideration, it could be imputed to the payment of the premium due November 15, 1936, and save the policy from forfeiture. The lower court accepted this witness' corrected testimony and we think properly so. Plaintiff, in her petition, sets out in minute detail each and every payment and its date, made on the policy. Such payments were sufficient to carry it through October 15, 1936. She produced no receipt showing an additional payment. It is conceded that for every deduction payment a receipt was issued and delivered to the assured.

For the reasons herein assigned, the judgment appealed from is affirmed, with costs.