300 So.2d 623 (1974)
Leon CARTER and Cora Lee Carter, Plaintiffs and Appellants,
v.
BENEVOLENT LIFE INSURANCE COMPANY, INC., Defendants and Appellees.
No. 4667.
Court of Appeal of Louisiana, Third Circuit.
September 11, 1974.
Rehearing Denied October 10, 1974.
Writ Refused December 13, 1974.
Neblett, Fuhrer & Broussard by Daniel E. Broussard, Jr., Alexandria, for plaintiffs and appellants.
McLure & McLure by John G. McLure, Alexandria, for defendants and appellees.
Before FRUGÉ, CULPEPPER and WATSON, JJ.
CULPEPPER, Judge.
This is a suit to recover death benefits under two industrial life insurance policies issued by the defendant, Benevolent Life Insurance Company. Each plaintiff, Leon Carter and his wife, Cora Lee Carter, is a beneficiary under one policy. Both policies insure the life of Mrs. Carter's brother, Tilmon Wright, for $500. From a judgment on the merits rejecting their demands, plaintiffs appealed.
The substantial issue is whether the defendant insurer, by an alleged custom of accepting overdue premiums, is equitably estopped to declare the policy void for nonpayment of premiums due.
*624 The policies were originally purchased in 1966 and 1967. Premiums were due in advance on the first day of each month in the sums of $2.56 and $2.60 respectively. With two or three exceptions, the premiums were paid fairly regularly until Mr. Carter became ill in the early part of 1971. At that time Rev. Timothy Coates was the agent in Alexandria for the defendant. He was a neighbor and friend of the Carters. Coates called and wrote plaintiffs frequently during 1971 urging payment of the overdue amounts. Finally, in about October of 1971, plaintiffs' accounts were transferred to the home office in Shreveport for handling.
The insured, Tilmon Wright, died of diabetes on April 27, 1972. At that time, the last premium paid was that due on December 1, 1971. On April 28, 1972, which was the day after the death of the insured, plaintiffs attempted to pay the premiums due through the month of April. The defendant insurer refused to accept the premiums and rejected the demands of the plaintiffs for the benefits under the policy.
There is a provision in the policy for a grace period of four weeks, but if payment be not made within that grace period "this policy shall thereupon become void and all premiums paid hereon shall be forfeited to the company." There is also a provision in the policy for "Revivals", upon application of the insured made within one year from the date to which premiums had been paid, provided evidence of the insurability of the insured satisfactory to the company was furnished. In the present case, we are not concerned with the provisions for "Revivals". There could be no "Revival" after the insured was deceased.
The following chart shows the relevant facts as to premium payments.

 NO. OF OVERDUE NOT DATE
DATE PREMIUM MONTHS INCLUDING PREMIUMS PAID
 PAID COVERED GRACE PERIOID TO
Aug. 18, 1969 4 mos. 3 mos. 18 days Aug. 1, 1969
Sept. 29, 1969 2 mos. Oct. 1, 1969
Mar. 9, 1970 5 mos. 4 mos. 9 days Mar. 1, 1970
Mar. 23, 1970 1 mo. April 1, 1970
May 11, 1970 1 May 1, 1970
July 13, 1970 3 mos. 1 mo. 13 days Aug. 1, 1970
Sept. 28, 1970 2 mos. Oct. 1, 1970
Nov. 16, 1970 1 mo. Nov. 1, 1970
Dec. 21, 1970 1 mo. Dec. 1, 1970
Apr. 5, 1971 3 mos. 3 mos. 5 days Mar. 1, 1971
Aug. 16, 1971 3 mos. 4 mos. 6 days June 1, 1971
Sept. 6, 1971 2 mos. 2 mos. 6 days Aug. 1, 1971
Oct. 25, 1971 2 mos. 1 mo. 25 days Oct. 1, 1971
Dec. 6, 1971 2 mos. 1 mo. 6 days Dec. 1, 1971
Apr. 28, 1972 4 mos. 3 mos. 28 days Apr. 1, 1972
(attempted payment
 after insured's
 death on April 27,
 1972)

From the above chart it is clear that on April 27, 1972, the date of death of the insured, the policies had lapsed for nonpayment of premiums. The last payment was made on December 6, 1971 to pay premiums through that due on December 1, 1971. *625 The premium due on January 1, 1972 was not paid, and under the grace period of four weeks the policies were effective only through the month of January, 1972.
Plaintiffs rely on the doctrine of equitable estoppel. They say that defendant's custom of accepting overdue premiums caused plaintiffs to reasonably believe that the policies would remain in effect even though the premiums were not paid when due. Plaintiffs rely on jurisprudence which allows recovery in such cases. These cases establish the following general rules: (1) There must be a habit or custom of accepting overdue premiums; (2) The insured must reasonably believe that by reason of this custom the insurer will maintain the policy in effect without prompt payment of premiums. See Morris v. Sovereign Camp, W. O. W., 203 La. 507, 14 So.2d 428 (1943); Holloman v. Jefferson Standard Life Insurance Company, 188 So. 500 (La.App. 2d Cir., 1939); Soleyman v. W. O. W., 3 So.2d 466 (2d Cir. 1941); Hebert v. Woodruff's Insurance Company, 19 So.2d 290 (La.App. 1st Cir. 1944), and Ellzey v. Hardware Mutual Insurance Company of Minnesota, 40 So.2d 24 (La. App. 1st Cir. 1949).
Under this jurisprudence, plaintiffs emphasize the fact that on three different occasions in 1971 the defendant insurer accepted premium payments which did not even bring the policies to a paid-up status. Specifically, plaintiffs point to the payments made on April 5, August 15 and September 6, of 1971. The argument is that the failure of the insured to void the policies on these occasions led the plaintiffs to believe that they could pay the premiums late without suffering a cancellation of coverage, and that these and the other occasions were sufficient to establish a custom or practice of dealing between the parties, giving rise to equitable estoppel.
On the other hand, the defendant stresses the fact that Mr. Carter had previously been associated with a funeral home and was familiar with industrial insurance and the requirements of paying premiums on time. Defendant points to the testimony of Mr. Carter which indicates that he was not actually led to believe the policies would remain in effect when premiums were overdue. A part of Mr. Carter's testimony is as follows:
Q. Did you figure you could send it in at any time and still be covered?
A. Uh, no, sirree bob.
Q. What did you figure then?
A. What I figured?
Q. Yes.
A. I figured that when I sent it in and and they accepted the money and kept the money and didn't send it back my insurance was in force.
Q. Would you have assumed if they had sent it back that your insurance wasn't in force?
A. Well, yes, sir, and I wouldn't of looked upon that I had any insurance if they'd send the money back, but they didn't send the money back. They kept it.
Q. If they had sent the money back you wouldn't be complaining?
A. Well, no, because I wouldn't figure I had any insurance."
The question of whether Mr. Carter was led to reasonably believe that he could follow a custom of making premium payments late without cancellation of the policy, is an issue of fact which the trial judge resolved as follows:
"Considering all of the evidence, the Court is satisfied that these plaintiffs were led to believe that they were not required to strictly comply with the provisions of the policy requiring prompt payment of the premiums. However, it is the opinion of this Court that the plaintiffs could not have been misled to the extent that they failed to pay any premiums for a period of some three *626 months. It follows that the defendant is not estopped from claiming that the policies in question are lapsed because of plaintiffs' failure to timely pay the required premiums."
The reasoning of the trial judge is that plaintiffs were led to believe they could be late a short time, but not as much as they were in this instance, i.e., three months and 27 days. Under all of the circumstances, we can find no manifest error in this conclusion of fact by the trial judge.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed to the plaintiffs appellants.
Affirmed.