LeBLANC, Judge.
This is an appeal by the plaintiffs of a judgment which dismissed their claim for damages against defendant, Illinois National Insurance Company, based on a finding that, at the time of the accident, the policy had lapsed for nonpayment of the premium. After a thorough review of the record and arguments presented on appeal, we affirm.
The insured, David Betz, through Jerry Guffy’s insurance agency, obtained a policy of automobile insurance from Illinois National Insurance Company for a policy period of April 12, 1994 to April 12, 1995, for which he agreed to make monthly payments. The following sequence of events is pertinent to resolving the issue of coverage:
04/12/94 Inception date of the policy.
08/04/94 No payment received from Betz. Illinois National mailed “notice •of cancellation” to Betz for nonpayment of the premium, such cancellation to become effective 08/19/94.
08/19/94 Cancellation date passes with no payment made on Betz policy.
08/31/94 Automobile accident involving the Betz vehicle.[1]
*1264 09/01/94 Betz made $60 partial payment on the policy.
09/02/94 Policy reinstated.
Plaintiffs do not deny that Betz did not pay the premium timely or that he received the cancellation notice. Indeed, the record reflects that notice of cancellation was in accordance with La. R.S. 22:636.1(D)(1): it was mailed to the policyholder (Betz) on August 4, 1994, at least 10 days prior to the date cancellation which the notice indicated would be August 19, 1994; and, it stated that the reason for cancellation was nonpayment of the premium. ^Instead, plaintiffs maintain the payment (by Betz) and acceptance (by Illinois National) of the premium on September 1, 1994 constituted a waiver of the default by the insurer, which continued the binding effect of the original policy. They also assign as error the trial court’s failure to apply equitable estoppel and find coverage based on the insurer’s “custom or practice of extending coverage ... [and] reinstating] his [Betz] policy eight times after it was lapsed for nonpayment of [the] premium.”[2]
A cancellation notice must be unequivocal, and the determination of the sufficiency and effectiveness of a cancellation notice depends upon the language of that particular cancellation notice. See Chapman v. Leger, 405 So.2d 604, 607 (La.App. 3 Cir.1981).
In arguing that the acceptance of Betz’s .late, partial payment constituted a waiver of default by the insurer, plaintiffs assert the cancellation notice was not unequivocal. However, the alleged “deficiencies” of which plaintiffs complain concern the reinstatement notice, which denotes the policy period as “4/12/94 to 4/12/95”, and which indicates that the policy may be subject to lapse iri coverage. We find neither of these alleged irregularities lessen the unequivocal nature of the cancellation notice received by Betz. That notice, entitled “NOTICE OF CANCELLATION OF PERSONAL AUTO POLICY” provides the following:
Cancellation to take effect at 12:01 AM 08/19/94 Date of notice 08/04/94
Your policy is being cancelled for nonpayment of premium. To continue your policy without interruption of coverage, please remit the amount due prior to the cancellation date listed above. For your convenience a premium payment card and énvelope are provided. If you have already paid the amount due, please disregard this notice.
Reason for cancellation — Non-payment of premiums.
| important notice ... Your drivers license and vehicle registration privileges may be suspended if you do not keep your liability insurance in force. We are required by law to report specific termination information to the department of motor vehicles and/or public safety.
The lienholder listed on the policy, if any, has been notified.
The notice also contained a bottom portion to be used for payment indicating a current amount due of $354.25.
Contrary to plaintiffs’ assertions, the above notice is clearly a notice of cancellation for non-payment of premiums, effective August 19, 1994. The language allowing the insured to prevent interruption in coverage by payment of the amount due prior to the date of cancellation does not contradict or confuse the clear language indicating the policy is to be cancelled on August 19, 1994. See Gooden v. McMorris, 588 So.2d 783 (La.App. 4 Cir.1991); writ denied, 590 So.2d 1202 (La.1992).
Further, neither the language in the reinstatement notice indicating there may be a lapse in coverage nor the fact that the policy period is identified as 4/12/94 to 4/12/95 weakens the unequivocal nature of the cancellation notice. The reinstatement notice indicates that payment was made after can-eellation/termination date and that the policy is reinstated on 09/02/94. It further indicates the policy was reinstated with lapse in coverage. By definition, to reinstate a policy means “to restore the insured to all the benefits accruing under the policy contract”; however, for there to be a reinstatement, it is necessary that there be an interval during *1265 which the insured no longer is covered by-insurance. Bryant v. Viking Insurance Company of Wisconsin, 579 So.2d 1241, 1243 (La.App. 3 Cir.1991). The fact that there was a reinstatement presupposes there was a lapse in coverage; thus, the reinstatement, rather than weaken, actually bolsters the fact that there was a preceding cancellation.
| gPlaintiffs further assert that even if the cancellation notice was valid, the doctrine of equitable estoppel should have been applied to prohibit the insurer from denying coverage. Plaintiffs rely on a line of jurisprudence which supports a finding of coverage despite non-payment of premiums when the insurer has established a custom of accepting overdue premiums and caused the policyholder to reasonably believe that the policies would remain in effect even though the premiums were not paid when due. See Carter v. Benevolent Life Insurance Company, Inc., 300 So.2d 623 (La.App. 3 Cir.1974); writ denied, 304 So.2d 666 (La.1974). The question of whether a policyholder has been led to reasonably believe that he could follow a custom of making premium payments late without cancellation of the policy is an issue of fact for the trial court to resolve, and will not be overturned absent manifest error. Carter, 300 So.2d at 625.
The only evidence presented in this case to establish any such custom was the testimony of Michael Lee, the manager of Jerry Guffy Insurance, who testified that Betz’s policy had been cancelled approximately eight times prior to the August, 1994 cancellation. However, the documentation surrounding these prior cancellations and reinstatements is not contained in the record, so we are unable to determine whether any such custom had been established. Furthermore, the policyholder, Mr. Betz, was not called as a witness, and there is no other evidence in the record from which we can determine his “reasonable beliefs” pertaining to his policy coverage. Thus, the testimony of Mr. Lee, alone, is insufficient to establish a custom on the part of the insurer or the reasonable beliefs of the policyholder. In the absence of such evidence, the record reflects that the Betz policy was cancelled on August 19,1994, and the trial court did not manifestly err in finding there was no coverage on the date of the accident, August 31, 1994. See State Farm Mutual Automobile Insurance Company v. Maryland Casualty Company, 490 So.2d 819 (La.App. 3 Cir.); writ denied, 494 So.2d 1182 (La.1986).
For the foregoing reasons, the judgment of the trial court, dismissing plaintiffs’ action is affirmed; costs of this appeal are assessed to the plaintiffs.
AFFIRMED.

. The record in this matter, including the.briefs, contains contradicting information regarding the date of the accident at issue; in some instances it is stated as August 21, 1994, while in other instances it is August 31, 1994. Although not pertinent to the issue before us, we have concluded that the accident occurred on August 31, 1994, as reflected in the emergency room records where plaintiff sought medical treatment immediately following the accident.

. Appellants also assign as error the trial court’s failure to award penalties and attorney’s fees; however, since we find no merit to the other assignments, we need not address this one.