| | | |
|---|---|---|
| **STUDIO WTA, LLC** | * | **NO. 2022-CA-0783** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **PRUCO LIFE INSURANCE** | * | |
| **COMPANY, JOHN** | | **FOURTH CIRCUIT** |
| **GUARNIERI, AND ABC** | * | |
| **INSURER** | | **STATE OF LOUISIANA** |

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2020-03296, DIVISION "M"
Honorable Paulette R. Irons, Judge
* * * * * *
**Judge Dale N. Atkins**
* * * * * *

(Court composed of Chief Judge Terri F. Love, Judge Paula A. Brown, Judge Dale N. Atkins)

Paul C. Thibodeaux
Rebekka C. Veith
FISHMAN HAYGOOD, L.L.P.
201 St. Charles Avenue
Suite 4600
New Orleans, LA 70170


COUNSEL FOR PLAINTIFF/APPELLANT, Studio WTA, LLC


Charles L. Stern, Jr.
THE STEEG LAW FIRM, L.L.C.
201 St. Charles Avenue
Suite 3201
New Orleans, LA 70170

Andrew S. Azarmi    (Pro Hac Vice)
DENTONS US LLP
1900 Harrison Street
Suite 1300
Oakland, CA 94612

Anne E. Waddell    (Pro Hac Vice)
DENTONS US LLP
4675 MacArthur Court
Suite 1250
Newport Beach, CA 92660


        COUNSEL FOR DEFENDANT/APPELLEE, Pruco Life Insurance
Company

**AFFIRMED**
**MAY 19, 2023**

DNA
TFL
PAB

This is an insurance coverage dispute arising from a denial of coverage under a life insurance policy. Plaintiff/Appellant, Studio WTA, LLC ("Studio WTA"), appeals the trial court's September 1, 2022 judgment, which dismissed its Petition for Damages with prejudice and granted Defendant/Appellee's, Pruco Life Insurance Company ("Pruco"), Motion for Summary Judgment. For the reasons that follow, we affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Studio WTA is a New Orleans based architectural design firm. In January 2016, Studio WTA was owned and operated by three members: Wayne Troyer ("Mr. Troyer"), the majority owner; and minority owners Julie Babin ("Babin"), and Tracie Ashe ("Ashe"). The three members executed an operating agreement that included Studio WTA's obligation to fund the buyout of a deceased member's share. In order to fund such a buyout, Studio WTA would obtain a life insurance policy on each of its three members. Studio WTA therefore purchased on March 24, 2016, a $750,000 "key man" term life insurance policy ("the Policy") on Mr.

1

Troyer from Pruco through an insurance broker.[1] Studio WTA separately purchased two additional policies in the amount of $250,000 each for its remaining two minority owner members.[2] Studio WTA designated John Guarnieri ("Mr. Guarnieri"), its office manager, as the responsible party to make premium payments on the Policy.

Mr. Troyer was diagnosed with cancer in November of 2016. By late February of 2019, Mr. Troyer's health was failing. Mr. Troyer died on May 3, 2019.

***THE POLICY***

The Policy provided that if the insured, Mr. Troyer, died during the Policy term, and "the contract is in place at the time of death; that is, the initial premium has been paid and no premium is past due beyond the 31-day grace period," Pruco would pay the $750,000 death benefit. Studio WTA elected to make quarterly premium payments. The first quarterly installment payment was due on March 24, 2016. If a premium payment was not paid by the due date, the Policy allowed Studio WTA a thirty-one day grace period in which payment could be made without a lapse in coverage. However, if payment was not received by the end of the grace period, the Policy would lapse and have no value. The Policy stated, in pertinent part:

---

[1] Pruco, a subsidiary of the Prudential Insurance Company of America, issued the Policy. The Prudential Insurance Company of America and Pruco are Prudential Financial Inc. companies.

[2] The policies on Babin and Ashe were obtained from a different insurer.

**Grace Period**  We grant a 31-day grace period for paying each premium except the first one. If the premium has not been paid by the due date, the contract will stay in force during the grace period. If the premium has not been paid when its grace period is over, the contract will end and have no value.

The Policy further provided that should it lapse for non-payment, the Policy owner, Studio WTA, could reinstate it by making the outstanding premium payments, as long as Studio WTA could "prove to [Pruco] that the Insured is insurable for the contract." Specifically, the reinstatement provision provided:

**REINSTATEMENT**

You may reinstate this contract after the grace period of a past due premium if: the term period has not ended; the premium payment is not past due more than five years, and you prove to us that the Insured is insurable for the contract.

*PRUCO'S PREMIUM NOTICES*

Pruco mailed a "premium notice" about one month before the payment was due, and mailed notices of lapse of coverage approximately one week after the grace period ended if the premium payment was not received. The front of each premium notice included the premium amount due, the notice date, and the due date of the premium payment. On the back was a section titled "General Information," which stated:

**Notice – Failure to Pay PREMIUM DUE On Time** – Any Premium Due shown on the other side is payable by the Due Date shown. However, there is a 31-day grace period for your benefit. If a premium is not paid by the end of the 31-day grace period, your policy will end and have no value.

**Responsibility for Paying Premiums** – Premiums are payable when due on this policy, even if no premium notice is received from us. By sending this notice, we are not waiving any past due premiums. Neither do we waive any forfeiture that may have occurred before, on, or after any past due date. (Emphasis in original)

3

*STUDIO WTA'S PREMIUM PAYMENT HISTORY*

Studio WTA made several untimely premium payments throughout the life of the Policy. In the first instance, the premium payment was due on December 24, 2016. Pruco sent a premium notice on November 29, 2016, which stated that a premium payment was due on December 24, 2016. Studio WTA failed to make payment by either December 24, 2016, or January 23, 2017, the last day of the grace period. Because Pruco did not receive the premium payment by the end of the grace period, Pruco sent a notice of lapse on February 1, 2017, which stated that the Policy had "lapsed on January 24, 2017, and no longer provides coverage." Studio WTA could "reinstate [the Policy] without having to answer any health questions" by making the outstanding payment. Pruco advised Studio WTA to **"[c]arefully review the 'Important Information Regarding Reinstatement' on the reverse side of this letter for additional details."** (emphasis in original.) On the reverse side was a section titled "**Important Information Regarding Reinstatement**," which stated:

> Although this policy lapsed at the expiration of its grace period, you can reinstate coverage without providing evidence of insurability, subject to the following requirements:
> - **Payment must be received by Prudential before the death of the insured.**
> …
> **Please note that Prudential is not waiving its contractual right to require evidence of insurability. If the requirements specified above are not met, you may have to answer questions about the insured's health by completing an** *Application for Restatement* **in order to reinstate.** (emphasis in original)

Pruco received the payment from Studio WTA on February 13, 2017, accepted the payment, and sent a notice of reinstatement on February 14, 2017, that informed Studio WTA that the Policy had "been reinstated effective February 13, 2017[.]"

In the second instance, Pruco sent a premium notice on August 29, 2017, which stated that a premium payment was due on September 24, 2017. Studio WTA failed to make payment by either September 24, 2017, or October 24, 2017, the last day of the grace period. Because Pruco did not receive the premium payment by the end of the grace period, Pruco sent a notice of lapse on November 2, 2017, which stated that the Policy had "lapsed on October 25, 2017, and no longer provides coverage." Studio WTA could reinstate by making the outstanding payment. This notice of lapse contained the same "Important Information Regarding Reinstatement" as the previous notice of lapse.

Pruco received the payment from Studio WTA on November 21, 2017, accepted the payment, and sent a notice of reinstatement on November 22, 2017, that informed Studio WTA that the Policy had "been reinstated effective November 21, 2017[.]"

In the third instance, Pruco sent a premium notice on February 27, 2018, for a premium payment due on March 24, 2018. Studio WTA failed to make payment by either March 24, 2018, or April 23, 2018, the last day of the grace period. Pruco did not receive the premium payment by the end of the grace period; therefore, Pruco sent a notice of lapse on May 2, 2018, which stated that the Policy had "lapsed on April 24, 2018, and no longer provides coverage." Studio WTA could reinstate by making the outstanding payment. Pruco again advised Studio WTA to "[c]arefully review" the statement that payment must be received before Mr. Troyer's death, as in the previous notices of lapse.

Pruco received the payment from Studio WTA on May 24, 2018, accepted the payment, and sent a notice of reinstatement on May 25, 2018, that informed Studio WTA that the Policy had "been reinstated effective May 24, 2018[.]"

Following this reinstatement on May 24, 2018, Studio WTA made the next three premium payments timely. In total, of the twelve premium payments due before the premium payment due on March 24, 2019 ("the March 2019 Premium Payment"), Studio WTA paid three of them after the termination of the grace period. On February 26, 2019, Pruco mailed the February Premium Notice to Studio WTA, which stated that the March 2019 Premium Payment was due on March 24, 2019, and that timely payment would provide continuing coverage from March 24, 2019, through June 23, 2019. Pruco did not receive payment by either March 24, 2019, or April 23, 2019, the last day of the grace period, and therefore sent a notice of lapse on May 2, 2019 ("the May 2, 2019 Notice of Lapse"). The May 2, 2019 Notice of Lapse stated that the Policy had "lapsed on April 24, 2019, and no longer provides coverage." Studio WTA could reinstate "without having to answer any health questions" by making the outstanding payment. The language about reinstatement and the requirement of payment being received before Mr. Troyer's death was identical to the previous notices of lapse. However, before the May 2, 2019 Notice of Lapse reached Studio WTA, Mr. Troyer died on May 3, 2019.

In his deposition testimony, Mr. Guarnieri stated that, after receipt of the February Premium Notice, he made several handwritten notations on the February Premium Notice, which did not have the payment coupon section removed. The first notation read "3.11.19". Mr. Guarnieri stated that he would "occasionally write a date number" on an invoice "so [he] knew that it was paid." The second notation was "Check 10315 3.18.19". Studio WTA's accountant asserted in her deposition testimony that her review revealed that while Studio WTA's check numbered 10315 ("Check #10315") was not issued to Pruco for the March 2019

6

Premium Payment, it was never cashed. The third notation read "5.8.19 AKG73QMM", which is the confirmation number given during Mr. Guarnieri's call with Pruco on May 7, 2019.[3] Pruco and Studio WTA dispute whether Studio WTA paid the March 2019 Premium Payment.

***TEMPORARY REINSTATEMENT OF POLICY***

Studio WTA received the May 2, 2019 Notice of Lapse on May 7, 2019. The same day, according to Mr. Guarnieri's deposition testimony and a transcript of Pruco's call recording, Mr. Guarnieri called Pruco. When Pruco's customer service agent asked for his name, Mr. Guarnieri identified himself as Wayne Troyer. However, when asked what his role was at Studio WTA, Mr. Guarnieri stated that he was Studio WTA's office manager. During the call, Mr. Guarnieri claimed that he was "baffled" because he "showed that [he] paid" the March 2019 Premium Payment, although he could not locate any record of a check for this payment. Mr. Guarnieri made payment in full for the March 2019 Premium Payment by phone during this same call. Mr. Guarnieri did not inform the Pruco employee that Mr. Troyer was deceased.

On May 8, 2019, Studio WTA's insurance broker called Pruco to inform Pruco of Mr. Troyer's death. At that time, Pruco had not yet processed the payment that Mr. Guarnieri made by phone. After the call, a Pruco employee made the following note in Pruco's internal case management system:

Approximate Values Examined or Quoted for [the Policy]:

Death Claim Eligibility Date: 05/03/2019

Death Claim Eligibility: Ineligible[.]

---

[3] The call log from Pruco shows the date of the call as May 7, 2019. Mr. Guarnieri's notation gives a date of May 8, 2019.

However, on May 9, 2019, Pruco processed the March 2019 Premium Payment and mailed Studio WTA a "Reinstatement Receipt," which stated that the Policy had been reinstated effective May 8, 2019, and was paid through June 24, 2019. On May 10, 2019, a Pruco employee made a file note that a claim package needed to be sent to Studio WTA.

On May 30, 2019, Mr. Guarnieri called Pruco because he had not received any paperwork to make a claim on the Policy. A Pruco employee informed Mr. Guarnieri that "a previous notation show[ed] that this policy is no longer active." The call from Studio WTA's insurance broker on May 8, 2019, had informed Pruco of Mr. Troyer's death while the Policy was lapsed. Therefore, Pruco "did not submit any notification" to the beneficiary, Studio WTA, to begin the claim process. However, after Mr. Guarnieri stated that the Policy "was reinstated," the Pruco employee advised that he would "submit a request to check if the policy still has coverage," and once verified, Studio WTA would "receive the claim packet once the review is done."

The next day, May 31, 2019, Pruco sent a letter to Studio WTA asking for documentation (including a claim form and death certificate) to begin the claim process. On June 4, 2019, Mr. Guarnieri sent the requested documentation to Pruco.

However, on June 18, 2019, a Pruco employee noted in Pruco's internal case management system that "premium [received] on 05/08/2019 was received after the insured's death. Since the payment was [received] after death, there is no death benefit due and the policy status should have been lapsed. Please return the premium payment to the payor." That same day, Pruco generated a denial letter, addressed to Studio WTA, which stated that "[p]remium payments for [the Policy]

8

stopped on 12/18/2018, which caused the [P]olicy to end and have no value. The premium payment [received on] 05/08/2019 was received after the insured's day of death. As a result, no death benefit is payable." Pruco returned the March 2019 Premium Payment on July 25, 2019.

***STUDIO WTA'S PETITION FOR DAMAGES***

After Pruco denied its claim, Studio WTA filed a Petition for Damages ("Petition") on April 23, 2020, against Pruco, Mr. Guarnieri, and ABC Insurer.[4] Therein, as to Pruco, Studio WTA asserted that Pruco "waived its right to cancel the Policy for late payments" because "Pruco established a custom of accepting late payments from Studio WTA" and "was not prejudiced by any late payments." Studio WTA further asserted that Pruco's February Premium Notice dated February 26, 2019, for the March 2019 Premium Payment due on March 24, 2019, failed to comply with the notice requirements of La. R.S. 22:905, barring cancellation of the Policy for non-payment. Based on these allegations, Studio WTA claimed Pruco breached the Policy by refusing to pay the $750,000 death benefit, and was therefore liable for the death benefit of $750,000 plus penalties. Pruco answered the Petition denying all liability.

***PRUCO'S MOTION FOR SUMMARY JUDGMENT***

On June 21, 2022, Pruco filed a Motion for Summary Judgment ("Motion"). In its "Memorandum in Support of Motion for Summary Judgment," Pruco argued "the Policy language is clear and the material facts are not genuinely disputed" because "the Policy required the insurer to pay death benefits only if the Policy

_____

[4] Studio WTA's Petition alleged negligence against Mr. Guarnieri. In the event that Mr. Guarnieri had insurance, ABC Insurer was added as liable, jointly and *in solido*, with Mr. Guarnieri. The trial court's hearing on Mr. Guarnieri's Motion for Summary Judgment was held simultaneously with Pruco's. The trial court granted Mr. Guarnieri's Motion for Summary Judgment and dismissed Studio WTA's claims against Mr. Guarnieri with prejudice.

9

was in force at the time of the insured's death." In sum, Pruco argued "because the Policy on Mr. Troyer's life had lapsed before his death — the fourth lapse in three years — the Policy was not in force when Mr. Troyer died." Therefore, Pruco properly denied Studio WTA's claim for death benefits.

Pruco attached to its Motion an affidavit of Joanne Minor, Pruco's Director of Customer Service; the Policy; Pruco's records of premium notices, notices of lapse, and notices of reinstatement; the transcript of the May 7, 2019 call between Mr. Guarnieri and Pruco; excerpts from the deposition testimony of Mr. Guarnieri; deposition of Babin; deposition of Studio WTA's accountant; and the claim packet Mr. Guarnieri sent to Pruco on June 4, 2019.

Opposing Pruco's Motion, Studio WTA filed a Memorandum in Opposition. In its Opposition, Studio WTA argued that there were genuine issues of material fact as to whether timely payment was, in fact, made on the Policy; whether Pruco had created a pattern of accepting late payments and had therefore waived the right to cancel the Policy; and whether Pruco failed to comply with the statutory notice requirements of La. R.S. 22:905.

Studio WTA attached to its Opposition additional excerpts from the deposition testimony of Mr. Guarnieri, Babin, and Studio WTA's accountant; the copy of the February Premium Notice with Mr. Guarnieri's notations; email correspondence between Mr. Guarnieri and Studio WTA's insurance broker; a transcript of the call Mr. Guarnieri made to Pruco on May 30, 2019; the letter Pruco sent to Studio WTA on May 31, 2019, seeking documentation to complete the claim process; and the printout of Pruco's internal archive for the Policy.

On August 11, 2022, the trial court held a hearing on Pruco's Motion. Following the hearing, the trial court signed a judgment on September 1, 2022, which granted Pruco's Motion and dismissed Studio WTA's claims with prejudice. Studio WTA timely filed a Motion for Suspensive Appeal.

## ASSIGNMENTS OF ERROR

On appeal, Studio WTA raises four assignments of error:

1. The trial court erred because its determination that no genuine issues of material fact existed was based in part upon a weighing of evidence, including its impression of the credibility of the deposition testimony of Mr. Guarnieri.

2. The trial court erred in finding that no genuine issue of material fact existed as to whether the March 2019 premium payment at issue was made to Pruco.

3. The trial court erred in refusing to consider Studio WTA's waiver argument (and thereby finding that no genuine issue of material fact existed as to whether Pruco waived its right to cancel the Policy for nonpayment).

4. The trial court erred in finding that no genuine issue of material fact existed as to whether Pruco's payment notices complied with the provisions of Louisiana Revised Statutes § 22:905.

## DISCUSSION

### *SUMMARY JUDGMENT PRINCIPLES AND STANDARD OF REVIEW*

"The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action ...." La. C.C.P. art. 966(A)(2). It "is favored and shall be construed to accomplish these ends." *Id.* "After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the

motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).

"An appellate court applies the *de novo* standard of review in examining the trial court's ruling on a motion for summary judgment and utilizes 'the same criteria that govern the trial court's determination of whether summary judgment is appropriate.'" *Lirette v. Adams*, 2022-0552, p. 21 (La. App. 4 Cir. 1/31/23), ___ So.3d. ___, ___, 2023 WL 1252737 at *19 (quoting *Jones v. Boot Bar & Grill, C. Napco, Inc.*, 2022-0154, p. 12 (La. App. 4 Cir. 10/5/22), 350 So.3d 968, 978). Accordingly, "appellate courts ask the same questions the trial court does in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law." *Id.*

On a motion for summary judgment, "[t]he burden of proof rests with the mover." La. C.C.P. art. 966(D)(1). "The party seeking summary judgment has the burden of proving there is no genuine issue of material fact." *Lirette,* 2022-0552, p. 20, ___ So.3d. ___, ___, 2023 WL 1252737 at *10 (quoting *Jones*, 2022-0154, p. 12, 350 So.3d at 978). Thereafter, "[i]f the movant satisfies the initial burden, the burden shifts to the party opposing summary judgment to present factual support sufficient to show he will be able to satisfy the evidentiary burden at trial." *Id.* (quoting *Jones*, 2022-0154, pp. 12-13, 350 So.3d at 978-79). "However, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one

or more elements essential to the adverse party's claim, action, or defense." *Id.* (quoting *Jones*, 2022-0154, p. 13, 350 So.3d at 979). Only after the motion has been made and properly supported does the burden shift from the mover to the adverse party. *Id.* Subsequently, "the adverse party [must] produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." La. C.C.P. art. 966(D)(1). "The adverse party may not rely on mere allegations or denials to defeat a motion for summary judgment but must provide specific facts showing that a genuine issue remains for trial, and failure to do so will result in the rendering of the summary judgment." La. C.C.P. art. 967(B). Any supporting or opposing affidavits filed in connection with a motion for summary judgment must be based upon the affiant's personal knowledge. La. C.P.P. art. 967(A). "'If the adverse party fails to provide factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact' and summary judgment is appropriate." *Lirette,* 2022-0552, p. 20, ___ So.3d. ___, ___, 2023 WL 1252737 at *10 (quoting *Jones*, 2022-0154, p. 13, 350 So.3d at 979).

In considering a motion for summary judgment, the trial court cannot make credibility determinations but must construe reasonable factual inferences in favor of the party opposing the motion, resolving all doubt in favor of the opponent. *Id.*

"A genuine issue is a triable issue." *Id.* "More precisely, an issue is genuine if reasonable persons could disagree." *Id.* "However, 'if on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue.'" *Id.* "A fact is material when its existence or non-existence may be essential to the plaintiff's cause of action under the applicable theory of recovery." *Id.* "Facts are material if they potentially insure or preclude recovery,

13

affect a litigant's ultimate success, or determine the outcome of the legal dispute." *Id.* "Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of substantive law applicable to the case." *Id.*

### *RELEVANT INSURANCE AND CONTRACT LAW*

Summary judgment is appropriate in insurance cases when "the policy wording at issue is clear and unambiguously expresses the parties' intent" and, after taking the facts into account, the provisions of the insurance policy clearly do not provide coverage. *Allan v. Auto. Club Inter-Ins. Exch.,* 2017-0474, p. 4 (La. App. 4 Cir. 11/15/17), 316 So.3d 964, 966 (quoting *Bernard v. Ellis*, 2011-2377, pp. 9-10 (La. 7/2/12), 111 So.3d 995, 1002). "Interpretation of an insurance policy ordinarily involves a legal question that can be properly resolved by a motion for summary judgment." *Bernard*, 2011-2377, p. 9, 111 So.3d at 1002 (quoting *Cutsinger v. Redfern,* 2008-2607 (La. 5/22/09), 12 So.3d 945, 949). "Absent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume." *Id.* at pp. 9-10, 111 So.3d at 1002 (quoting *Magnon v. Collins,* 98-2822, p. 5 (La. 7/7/99), 739 So.2d at 196). "An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Civil Code." *Id.* at p. 9, 111 So.3d at 1002. Thus, "when the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. C.C. art. 2046. In order to determine whether the trial court's grant of summary judgment was proper, in the

matter *sub judice*, we must analyze the applicable substantive law regarding insurance policies and coverage.

With these principles in mind, we discuss Studio WTA's assignments of error out of order beginning with its second assignment of error.

In its second assignment of error, Studio WTA argues the trial court incorrectly determined there exists no genuine issue of fact as to whether Studio WTA paid the March 24, 2019 premium prior to Mr. Troyer's death on May 3, 2019. Summary judgment must be granted if there are no genuine issues of material fact. La. C.C.P. art. 966(A)(3). As previously noted, "[m]ere speculation will not defeat a motion for summary judgment, and conclusory allegations, improbable inferences, and unsupported speculation are insufficient to support a finding that a genuine issue of material fact exists." *Jordan v. Community Care Hospital*, 2019-0039, p. 17 (La. App. 4 Cir 7/24/19), 276 So.3d 564, 579 (quoting *Kinch v. Our Lady of Lourdes Reg'l Med. Ctr.*, 15-0603, pp. 7-8 (La. App. 3 Cir. 12/9/15), 181 So.3d 900, 905). Likewise, "[p]roof which establishes only possibility, speculation, or unsupported probability" is insufficient to defeat a motion for summary judgment. *Id.* at p. 18, 276 So.3d at 579 (quoting *Todd v. State Through Dep't of Social Services,* 96-3090, p. 16 (La. 9/9/97), 699 So.2d 35, 43.)

Studio WTA relies upon the deposition testimony of Mr. Guarnieri and its accountant to establish evidence it asserts is sufficient to show a genuine issue of material fact exists as to whether Studio WTA paid the March 24, 2019 premium prior to Mr. Troyer's death. Our *de novo* review of the record shows that Mr. Guarnieri did not provide any testimonial or documentary evidence of payment to

Pruco in March 2019. In pertinent part, the following colloquy occurred between Mr. Guarnieri and Pruco's counsel:

> Q. You have no documentation to reflect that such a payment, in fact, was made; do you?
> ….
> A. I can't recall specifically. I was just going by what information that I had written on the premium notice[,] and what [Studio WTA] attempted to locate from [its accountant,] and the fact that the [roofing company] never received the check, and I can't say that I didn't mail a check, the wrong check to Pruco."
> Q. You never located a check payable to Pruco for that premium installment; did you?
> A. Could not find one.
> Q. And you never found any evidence in any of the bank statements received from Capital One showing a payment to Pruco; did you?
> ….
> A. We couldn't locate that, no.

Even though Mr. Guarnieri could not provide proof of payment for the March 2019 Premium, in his deposition testimony he speculated that it was "certainly possible" that Check #10315 was for the March 2019 Premium Payment, and was mailed to Pruco. Mr. Guarnieri went so far as to claim in deposition testimony that Check #10315 "just disappeared." However, Studio WTA's accountant's deposition testimony does not support Mr. Guarnieri's belief that Check #10315 was mailed to Pruco. Studio WTA's accountant testified that Mr. Guarnieri asked for help in his search for proof that Studio WTA had paid the March 2019 Premium. The accountant stated that Mr. Guarnieri could not remember the method by which he made the payment, and because the accountant was unable to locate any record of proof of ACH (Automated Clearing House) fund transfer, payment over the phone, or online payment through Pruco's website, she opined that "the only other way it could have been paid was with a check[.]" By consulting a list of outstanding checks, the accountant testified that Check

#10315 "had never cleared the bank, it wasn't in the Quickbooks, and [Mr. Guarnieri] didn't have a copy of the check stub." Despite Studio WTA's belief at the time that this missing check may have been made out to Pruco for March 2019 Premium, Studio WTA eventually found the check stub for Check #10315, which was payable to an unrelated roofing company. Ultimately, both Studio WTA's accountant and Mr. Guarnieri stated they were unable to find any evidence of payment to Pruco for the March 2019 Premium in Studio WTA's records. In a prior instance, after Studio WTA's insurance broker emailed Mr. Guarnieri that the Policy had lapsed for non-payment of the September 24, 2017 premium, Mr. Guarnieri's response was that he "thought [he] paid" the premium. Mr. Guarnieri stated in his deposition that he had this belief based on his "set procedure of paying bills," which he elaborated included "occasionally writ[ing] a date number so I knew that it was paid." Contrary to his deposition testimony, the record evidence established the September 24, 2017 premium payment was untimely, despite Mr. Guarnieri's belief and his "set procedure."

In the matter *sub judice*, the Policy under which Studio WTA seeks to recover clearly and unambiguously provides that a death benefit is payable "at the insured's death […] if this contract is in force at the time of death; that is, […] no premium is past due beyond the 31-day grace period…." It is undisputed that the March 2019 Premium was due on March 24, 2019, and that Pruco has no record of receiving payment from Studio WTA either by the due date or the termination of the grace period. Therefore, according to the Policy's terms, the Policy lapsed on April 24, 2019. When Mr. Troyer died on May 3, 2019, the Policy was not in force, and thus no death benefit is payable to Studio WTA.

17

Our *de novo* review of the record reveals there are no genuine issues of fact as to whether the March 2019 Premium Payment at issue was made to Pruco. Studio WTA offered no evidence in support of its contention that the March 2019 Premium Payment was paid before Mr. Troyer's death. Rather, Studio WTA's contention is based solely on its unsupported, speculative statements and subjective beliefs. The undisputed record evidence establishes Mr. Guarnieri made the March 2019 Premium Payment by phone on May 7, 2019, after Mr. Troyer's death. We find Studio WTA's second assignment of error is without merit.

Next, in its first assignment of error, Studio WTA contends the trial court incorrectly weighed witness credibility in making its determination as to the lack of evidence concerning the March 2019 Premium Payment. In support of its contention, Studio WTA argues that the trial court summarily disregarded its evidence, indicating that the trial court did not believe Mr. Guarnieri's testimony because he held himself out as Mr. Troyer on the May 7, 2019 phone call between Mr. Guarnieri and Pruco after Mr. Troyer's death. We disagree. Our *de novo* review of the record reveals no evidence that the trial court weighed witness credibility in making its decision. Instead, the trial court correctly held that Mr. Guarnieri's belief that he paid the March 2019 Premium was not sufficient under the law. The trial court stated that:

> The most convincing to me is that the man said he paid it. Now, whether or not he wrote a check that does not mean anything to me.
> Was it cashed? That is what means something. If you have got that, hey, I am with you. I will tell them no. No. You have to pay the people $750,000. It does not matter what you say. It is evidence that the Court needs.

We agree with the trial court's decision. Therefore, we find that Studio WTA's first assignment of error is without merit.

18

In its third assignment of error, Studio WTA contends that Pruco waived any right to cancel the Policy and deny coverage for non-payment in two ways. First, Studio WTA argues in its brief to this Court that "Pruco established a course of conduct of accepting late payments and keeping the Policy in force without requiring proof of insurability, thus leading Studio WTA to reasonably believe that the Policy would not lapse even if it made a late payment with no proof of insurability." Second, Studio WTA argues that "after Pruco learned of facts that led it to believe it could cancel the Policy, Pruco failed to act to cancel the Policy and instead conducted itself as if the Policy were still in force." Pruco counters that its prior reinstatements were permissible under the Policy because they were conditioned on Mr. Troyer being alive and "insurable for the contract." Pruco cites to specific language in the Policy, the February Premium Notice, and the May 2, 2019 Notice of Lapse which it asserts speak directly to waiver.

Waiver is the intentional relinquishment of a known right, power, or privilege. *Arceneaux v. Amstar Corp.*, 2006-1592 (La. App. 4 Cir. 10/31/07), 969 So.2d 755; *Tate v. Charles Aguillard Ins. & Real Estate, Inc.*, 508 So.2d 1371 (La. 1987). "Waiver occurs when there is an existing right, a knowledge of its existence and an actual intention to relinquish it, or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished." *Tate*, 508 So.2d at 1373. "[R]eliable proof of such a knowing and voluntary waiver is necessary and the burden of producing it, as in the proof of obligations generally, falls on the party who demands performance." *Id.* at 508 So.2d 1375 (citing La. C.C. art. 1831).

In the present case, Studio WTA submitted evidence showing that, for three out of the twelve payments due before the March 2019 Premium Payment at issue,

Pruco accepted payment after the 31-day grace period lapsed and did not require Studio WTA to prove Mr. Troyer was still alive. Further, Studio WTA referenced language in the letters Pruco sent advising Studio WTA of their missed payments, stating that the Policy had "lapsed" and to "reinstate [the Policy] without having to answer any health questions." Pruco instructed Studio WTA that the procedure to reinstate was to "just mail the attached payment coupon and your payment made payable to Prudential…." Finally, Studio WTA submitted deposition testimony from Mr. Guarnieri explaining his "belief, because Pruco continued to accept the payments and maintain the Policy, the Policy remained in effect with no lapse in coverage." Relying upon the doctrine of equitable estoppel, Studio WTA cited *Cormier v. Lone Star Life Insurance Co.*, 500 So.2d 431 (La. App. 3 Cir. 1986) as jurisprudential support which allows recovery in this matter. Well-settled jurisprudence holds an insured can recover under the doctrine of equitable estoppel where an insurer's custom of accepting overdue premiums "led the insured to believe that [the] policy would remain in effect even though the premiums were not paid when due." *Ledent v. Guar. Nat. Ins. Co.,* 31,346, p. 9 (La. App. 2 Cir. 12/28/98), 723 So.2d 531, 536 (citing *Lafargue v. United Royal Life Ins. Co. of La.*, 169 So.2d 240 (La. App. 4 Cir. 1964); *Cormier v. Lone Star Life Ins. Co.,* 500 So.2d 431 (La. App. 3 Cir. 1986); *State Farm Mut. Auto. Ins. Co. v. Maryland Cas. Co.*, 490 So.2d 819 (La. App. 3 Cir. 1986); *Bodi v. Gov't Emps. Ins. Co.*, 349 So.2d 1327 (La. App. 1 Cir. 1977); *Carter v. Benevolent Life Ins. Co.*, 300 So.2d 623 (La. App. 3 Cir. 1974)). "In such a case, the following criteria apply: (1) there must be a habit or custom of accepting overdue premiums; and (2) the insured must reasonably believe that by reason of this custom the insurer will maintain the policy in effect without prompt payment of the premiums." *Id.* In *Cormier*, an

20

insured made premium payments on a hospitalization policy. None of the payments were made on the due date, and only five were paid within the 31-day grace period. After each missed premium payment, Lone Star, the insurer, sent letters to Mr. Cormier, the insured, stating the premium payments had not been received, and the policy had been terminated. Lone Star refused to pay benefits for Mr. Cormier's back surgery because it contended the policy was canceled. The Third Circuit found "the policy remained in full force and effect" and Lone Star was "estopped from asserting the forfeiture of the policy for the late payment of premiums." *Cormier*, 500 So.2d at 431. The Third Circuit further determined that because "the person insured [could] reasonably believe that because of this habit or custom, the insurance company will keep the policy in effect without timely premium payments" *Id.* Although Studio WTA relies upon *Cormier*, we find the facts in *Cormier* distinguishable. The dispute in *Cormier* concerned a hospitalization policy, not a life insurance policy; the insured was insurable; and no evidence was offered that the hospitalization policy in *Cormier* had any provision regarding lapse and reinstatement.

In the present matter, by contrast, the Policy included express language authorizing reinstatement following lapse for non-payment provided certain conditions were satisfied. The premium notices that Pruco sent to Studio WTA included language taken directly from the Policy concerning the consequences for a late premium payment, providing "[i]f a premium has not been paid by the end of its 31-day grace period, [the Policy] will end and have no value." Further, the notices of lapse provided information on how the terminated Policy could be reinstated. In bolded language on the front page of each notice of lapse, Pruco called Studio WTA's attention to "[c]arefully review the 'Important Information

Regarding Reinstatement' on the reverse side of this letter for additional details." Specifically, that information included this statement, also in bold type: "Payment must be received by Prudential before the death of the insured." This language is consistent with the language provided in the "Reinstatement" section of the Policy. "When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and courts must enforce the contract as written." *Cosey v. Flight Acad. of New Orleans, LLC*, 2019-0757, p. 5 (La. App. 4 Cir. 5/13/20), ___ So.3d. ___, ___, 2020 WL 2478462 at *3. We find the terms of the Policy's provision on reinstatement are explicit and unambiguous. As required by the Policy provision on reinstatement, Studio WTA paid the overdue premiums necessary to reinstate the Policy the first three times it lapsed, and it satisfied the Policy's condition that Mr. Troyer was still alive when each of the three reinstatement payments were received. Pruco, on each of the three occasions, accepted the payments and reinstated the Policy in accordance with the Policy's terms. However, when the policy lapsed a fourth time, Mr. Troyer died after the date of the lapse and before Studio WTA took action to reinstate the Policy. Therefore, the Policy, by its own terms, could not be reinstated. Further, we find Mr. Guarnieri's belief that Pruco would maintain coverage in the interim period between the April 24, 2019 lapse and May 8, 2019 reinstatement ill-founded. Likewise, Mr. Guarnieri's belief that he could make an overdue premium payment on a life insurance policy after the death of the insured, Mr. Troyer, is ill-founded. Therefore, Studio WTA's first waiver argument is without merit.

Studio WTA's second waiver argument that because Pruco took more than two months to return the May 7, 2019 payment made by Mr. Guarnieri, Pruco has

thereby waived the right to cancel the Policy, is also without merit. Our review of the record evidence shows that Studio WTA caused the delay. Mr. Guarnieri identified himself as Mr. Troyer on the May 7, 2019 call with Pruco's customer service. The day after, May 8, 2019, Pruco learned Mr. Troyer died on May 3, 2019. It took Pruco a few weeks to investigate and determine Studio WTA's claim due to the confusion caused by Mr. Guarnieri's call. We find that Studio WTA failed to meet its burden to show that Pruco intentionally relinquished its right to cancel the Policy for untimely payment of premiums. Studio WTA's third assignment of error is without merit. Given our findings on Studio WTA's first three assignments of error, we pretermit discussion of Studio WTA's fourth assignment of error and affirm the decision of the trial court.

## DECREE

For the reasons discussed above, we affirm the trial court's September 1, 2022 judgment.